## MARION & RYE VALLEY RAILWAY COMPANY *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 315.  Argued January 6, 1926.—Decided March 1, 1926.

1. Where the taking (if any) of a railroad, under the Federal Control Act, was purely technical, resulting from the generality of the President's proclamation, etc., and the Director General did not in fact take over its possession or control or deal with it specifically in any way, so that it continued to be operated by the owner company as theretofore, without interference, the company could not maintain an action for " just compensation " under § 3 of the Act, since nothing of value was taken from it, it was subjected to no pecuniary loss by the Government, and nominal damages are not recoverable in the Court of Claims. P. 282.

2. The Federal Control Act, in authorizing the President to agree with any carrier of whose railroad he took possession and control that it should " receive as just compensation an annual sum . . . for each year, and pro rata for any fractional year of such Federal control, not exceeding a sum equivalent as nearly as may be to its average annual railway operating income for the three years ending June thirtieth, nineteen hundred and seventeen " (§ 1), did not establish a rule of compensation applicable when there was no agreement, but relegated the carrier in that case to proceedings for the ascertainment of just compensation (§ 3), in which the burden was on the carrier of proving the value of the use taken from it, or the damage suffered by it, under rules ordinarily applicable to takings by eminent domain. P. 283.

3. Although § 3 of the Federal Control Act declares that, in such proceedings, the report of a board of referees appointed by the Interstate Commerce Commission shall be *prima facie* evidence of the amount of just compensation and the facts stated therein, a report which by its face, and by the findings of the Court of Claims, is shown to have been based upon mere assumptions, without evidence of loss or damage, has no evidential value. P. 285.

60 Ct. Cls. 230, affirmed.

APPEAL from a judgment of the Court of Claims rejecting a claim for compensation for the alleged taking of the petitioner's short line railway.

*Messrs. Ben B. Cain* and *Milton C. Elliott,* for appellant.

Mr. *A. A. McLaughlin,* Solicitor of the United States Railroad Administration, with whom *Solicitor General Mitchell* and *Mr. Sidney F. Andrews* were on the brief, for the United States.

*Messrs. Victor A. Remy* and *Milton C. Elliott* filed briefs as *amici curiae,* by special leave of Court.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The Marion & Rye Valley Railway Company, a short-line railroad, brought this suit in the Court of Claims to recover $14,425.94 as compensation for the alleged taking possession and use by the United States of its railroad during the period beginning December 28, 1917 and ending June 29, 1918. That sum is the amount which, on September 30, 1922, a board of referees appointed by the Interstate Commerce Commission pursuant to § 3 of the Federal Control Act, March 21, 1918, c. 25, 40 Stat. 451, 454, found to be just. The application for the appointment of the board was made after the Director General had refused to pay the company any compensation.[1] The suit was begun after he had refused to accept the report as a basis for settlement. The case was heard upon a stipulation of the facts which the court adopted as its findings. The Government denied liability. It contended that there was not a legal taking, because the President did

---

[1] The board entered upon the hearing and made its report despite objection by the Director General that it was without jurisdiction, because the proceeding was commenced after Transportation Act, 1920, February 28, c. 91, 41 Stat. 456, 460, had provided by § 204 another and exclusive remedy for carriers which, like the plaintiff, had operated their own railroads throughout the period for which compensation was claimed.

not take actual possession of the railroad, did not operate it, and did not otherwise exercise control. It contended, also, that, even if there was a technical taking of possession, the plaintiff was not entitled to any compensation, because it suffered no pecuniary loss. Both contentions were sustained by the court; and judgment was entered for the defendant on January 26, 1925, 60 Ct. Cls. 230. The appeal was duly taken under § 242 of the Judicial Code. We have no occasion to determine whether in law the President took possession and assumed control of the Marion & Rye Valley Railway. For even if there was technically a taking, the judgment for defendant was right. Nothing was recoverable as just compensation, because nothing of value was taken from the company; and it was not subjected by the Government to pecuniary loss. Nominal damages are not recoverable in the Court of Claims. *Grant* v. *United States,* 7 Wall. 331, 338.

Power to take possession and assume control of any railroad, on account of the war emergency, had been conferred upon the President by Act of August 29, 1916, c. 418, 39 Stat. 619, 645. See *Northern Pacific Ry. Co.* v. *North Dakota,* 250 U. S. 135, 142–147; *Missouri Pacific R. R. Co.* v. *Ault,* 256 U. S. 554, 556–7; *St. Louis, Kennett & Southeastern R. R. Co.* v. *United States,* 267 U. S. 346. The President issued, on December 26, 1917, a Proclamation which recited that "[I] do hereby . . . take possession and assume control at 12 o'clock noon on the twenty-eighth day of December, 1917, of each and every system of transportation . . . consisting of railroads, . . . "; and a Director General was appointed. 40 Stat. 1733. Some general notices or orders issued by the Director General were received by the Marion & Rye Railway Company shortly after the issue of the Proclamation; but no order dealing specifically with that railroad was given by him. He did not at any time take over the actual possession or operation of the rail-

road; did not at any time give any specific direction as to its management or operation; and did not at any time interfere in any way with its conduct or activities. The company retained possession and continued in the operation of its railroad throughout the period in question. The railroad was operated during the period exactly as it had been before, without change in the manner, method or purpose of operation. The railroad did not serve any military camp; nor did it transport troops or munitions. The character of the traffic remained the same. Nothing appears to have been done by the Director General which could have affected the volume or profitableness of the traffic or have increased the requirements for maintenance or depreciation; and apparently it retained its earnings; expended the same as it saw fit; and, without accounting to the Government, devoted the net operating income to the company's use.

The company urges that the claim sought to be enforced rests upon a statutory right to the just compensation specifically defined in § 1 of the Federal Control Act; that the compensation there prescribed is for the rental value at the rate of the average annual railway operating income for the three years ended June 30, 1917; that by the taking, although technical, the Government agreed to pay the compensation defined in the statute; that the function of the board of referees, acting under the statute, was to find that sum " as nearly as may be," and that by its report it had done so. It is true that in this case the claim is founded upon " a law of Congress "; not upon a " contract, express or implied." Judicial Code, § 145, Par. First. Recovery can not be sought upon the contract implied in fact which, in view of the constitutional obligation justly to compensate for property taken by eminent domain, ordinarily arises on a taking of private property by the Government pursuant to law, where no provision is made by statute for ascertaining the amount

of compensation or for enforcing payment. Compare *United States* v. *Great Falls Manufacturing Co.*, 112 U. S. 645; 124 U. S. 581; *Tempel* v. *United States*, 248 U. S. 121, 129. Here, both the method of determining the amount and the means of enforcing payment are prescribed by statute. Compare *William Cramp & Sons, etc. Co.* v. *International Curtis Marine Turbine Co.*, 246 U. S. 28. But the question remains what is the amount recoverable. Did the Federal Control Act merely confer authority upon the President to enter into an agreement to pay as much as the so-called " standard return," or did it also direct him, if such an agreement was not reached, to make payment on the basis of the " standard return "?

Congress has power to recognize moral obligations. *United States* v. *Realty Co.*, 163 U. S. 427, 441–443. Hence, it could have provided for payment on the basis of the standard return, even where there was no damage according to the rules of law ordinarily applicable to takings by eminent domain. Congress did not, however, direct the President to make such payment. It merely authorized him to agree with any carrier of whose railroad he took possession and control that it should " receive as just compensation an annual sum  . .  for each year and pro rata for any fractional·year of such Federal control, not exceeding a sum equivalent as nearly as may be to its average annual railway operating income for the three years ended June thirtieth, nineteen hundred and seventeen." The provision did not establish a rule of compensation. The President was not permitted to agree to pay more, but he was left free to refuse to pay that sum. The carrier was left free to reject any offer that might be made. Where no agreement was reached, the carrier was relegated by § 3 to proceedings for ascertaining the amount of just compensation. The question thus becomes one of determining the " just compensation " for the use taken or damage done. If Congress had·intended

that the " standard return " should be taken as the measure of just compensation, in any event, there would have been no occasion for a hearing before a board of referees. The amount so payable could have been determined by calculation from the " average " annual railway operating income which, by § 1 of the Federal Control Act, p. 452, the Interstate Commerce Commission itself was required to ascertain and to certify to the President.

Thus, the fact that the right to recover compensation is a statutory one, did not relieve the railroad from the burden of proving the value of the use taken from the company or the damage suffered by it under rules ordinarily applicable to takings by eminent domain. Compare *Mitchell* v. *United States*, 267 U. S. 341, 345. Nor did the report of the board of referees supply the necessary evidence. It is true that § 3 of the Federal Control Act makes the report of the referees " prima facie evidence of the amount of just compensation and of the facts therein stated." But the legal effect of evidence is a question of law. The presumption otherwise attaching to a finding of the board was overcome by the facts stated in the report and in the findings of the Court of Claims. The board was required to " consider all the facts and circumstances "; and to " report as soon as practicable in each case to the President the just compensation " so ascertained. Its report discloses that it did not consider " the facts and circumstances." Its finding of just compensation rests wholly upon assumptions. It was assumed that compensation for the use of the company's property should be calculated upon the basis of an implied lease and agreement by the Government to pay a fair rental although, as the report states, there was " no evidence as to the amount for which the railroad could have been rented; and there is no likelihood that there was any market for its rental." It was assumed further that the assumed lease must be deemed to have been made

for an indeterminate period, because the duration of federal control could not be foretold on December 28, 1917; that this rental value should be ascertained as of the date of the commencement of federal control, and should be measured, not upon the then immediate outlook for business for the first six months of 1918, but by the then probable earnings for a period of years; and finally that the amount should be fixed at one-half of the average annual operating income for the three years prior to January 1, 1918, and not at the smaller amount actually shown to have been earned during the six months' period and retained by the company. In other words, the board simply adopted as its measure the so-called "standard return" of the Federal Control Act. No evidence was introduced before it to show that the alleged taking had subjected the company to any pecuniary loss or had deprived it of anything of pecuniary value, although the hearing before the board was commenced long after the period of alleged possession and control had expired.[2] The report was, therefore, without evidential value.

The opinion of the Court of Claims discloses, pp. 253–255, that the company claimed there that, if it was not entitled to recover under the Federal Control Act, it was entitled to recover under § 204 of the Transportation Act, 1920. This contention, overruled below, was not renewed here.

*Affirmed.*

---

[2] On or before July 4, 1918, the plaintiff received from John Barton Payne, General Counsel for the Director General, the following notice:

"June 24, 1918.

"DEAR SIR: It is not clear whether the Marion & Rye Valley Railway Company has at any time been under Federal control. To remove any possible question this order is issued definitely relinquishing same.

"Very truly yours,

"JOHN BARTON PAYNE.

"T. S. AMBLER, Gen. Mgr., Marion & Rye Valley Ry. Co.."