Campbell, Chief Justice,
delivered the opinion of the court:
This is an action by the Nevada-California-Oregon Eail-way to recover just compensation for the alleged taking of its railroad by the Government. The taking is based upon the proclamation by the President issued December 28, 1917, under the provisions of the general defense act, 39 Stat. 619, 645. The allegation is that the road was taken and kept under Federal control for the period between January 1 to June 29, 1918. The petition prays that this court “ de *83 termine the amount of such just compensation as provided by said section 3 of the Federal control act,” 40 Stat. 454.
The facts show that the plaintiff was a common carrier of passengers and freight and owned certain lines of railway consisting of 235 miles of main line extending from Heno, Nevada, to Hackstaff, California, and thence to Lakeview, Oregon, and also a branch line of about 40 miles through the Feather River Canyon. That part of the main line extending from Reno to Hackstaff, a distance of 64 miles, and the branch line of 40 miles had been sold in June, 1917, to the Western Pacific Railroad Company, but under the terms of a contract between plaintiff and the purchaser the former was to continue the operation of the line and branch, sold as stated, until certain work on them had been completed by the purchaser, and to assume the entire expense of such operation and retain the revenues therefrom. The purchaser took over the physical operation of these lines on January 29, 1918. The line of railroad, therefore, which the plaintiff corporation owned on January 1,1918, was a three-foot narrow-gauge railroad extending, from Hackstaff, California, to Lakeview, Oregon, consisting of about 171 miles of main-line track.
The plaintiff received the letters sent out by the Director General of Railroads under dates of December 28, 1917, and January 8, 1918. It also received other letters and questionnaires and complied with some of these, and it received a letter from the general counsel of the Director General dated June 29, 1918, addressed to its president in New York, and stating that this road was relinquished from Federal control. The facts also establish that plaintiff company was never ousted from the actual possession of its road throughout the period in question, but continued to operate the same exactly as it had done before the issuance of the President’s proclamation and without change in the manner, method, or purpose of operation. The general character of its traffic remained the same as before, and it did not serve any military camp, nor did it transport troops or munitions. During the six months in question it received all earnings of the railroad and expended the same without interference. It did not *84 account to the Government or to any agency of the Government for its earnings or its disposition of them.
In these circumstances, the case is not substantially different from that of Marion & Rye Valley Railway Co. 270 U. S. 280. This court was of opinion that the alleged taking of that road was not sustained by the proof, though it appeared that the company had received a number of the Director General’s orders and a final order relinquishing it from Federal control. The opinion of the Supreme Court says (p. 282): “ We have no occasion to determine whether in law the President took possession and assumed control of the Marion & Rye Valley Railway. For even if there was technically a taking, the judgment for defendant was right. Nothing was recoverable as just compensation, because nothing of value was taken from the company and it was not subjected by the Government to pecuniary loss.” The most that can be said of the effect of the proclamation and orders upon plaintiff or its road is that they amounted to a technical taking under Federal control. The Government was certainly not in actual possession. No accounting was made of its income. Its operation was by its officers. There is renewed here a contention that was made in the Marion & Rye Valley case, supra, upon the effect of section 1 of the Federal control act. But that act merely authorized the President to enter into an agreement to pay as much as the so-called “ standard return.” It did not direct him to pay anything in the absence of an authorized agreement. The President could refuse to pay as much as the “ standard return ” and the road was left free to reject any offer that might be made. Marion & Rye Valley case, p. 284. The provision did not establish a rule of compensation. Ib. The act provides that where no agreement is reached the carrier is relegated to section 3 of the Federal control act providing a method for ascertaining just compensation and the claim here asserted is in one phase of it based upon the action of the board of referees provided for in section 3. But “ the fact that the right to recover compensation is a statutory one did not relieve the railroad from the burden of proving the value of the use taken from the company or the damage suffered by *85 it under rules ordinarily applicable to takings by eminent domain.” Marion & Rye Valley cause, supra, p. 285. The report of the referees is attached to the petition and it is subject to the criticism applied in the case just cited. The petition avers and the report confirms the allegation, “ that compensation for the use of plaintiff’s railroad property should be calculated upon the basis of an implied lease by the Government and agreement to pay the fair rental therefor.”
This method was rejected in the Marion & Rye Valley case. The board reported that a stated sum was just compensation to plaintiff on account of the Government’s “ failure to return the property in as good repair and complete equipment as it was at the commencement of Federal control,” but this finding of the board is made “subject to such accounting adjustments as may be finally determined proper” under certain accounting rules of the Interstate Commerce Commission. The board also, subject to the same accounting rules, reported that there was a stated operating deficit during the period in question, and concluded that “the obligation of the Government to assume any net railway operating deficit that might be incurred during the operation of plaintiff’s property and to return plaintiff’s property in as good repair and complete equipment as it was in at the commencement of Federal control was, and is, just compensation to the plaintiff for the aforesaid use of its property during the said period of Federal control and the preservation thereof.” The amounts thus ascertained were $26,305.44 “ operating deficit ” and $14,546.92 on account of depreciation. Claiming these items, the petition also claims additional sums. The statute, section 3, provides that the report of the referees shall be prima facie evidence of the amount of just compensation and of the facts therein stated. This is not to say that the conclusions of the board, based upon an erroneous view of the elements making up just compensation, are controlling or, indeed, have any effect. The amount ascertained as operating deficit and the amount ascertained as depreciation may be correct, but the conclusion that these constitute parts of the just compensation to which the company may be entitled is clearly erroneous. With the effect of these items, if an agreement such as is *86 authorized by section 1 of the Federal control act were made, we have nothing to do. The agreement was not made. Failing that agreement, the company’s recourse was to section 8; which authorizes the board of referees to act, and also authorizes an agreement by the President with the earner that may include provisions similar to those mentioned in section 1.
It is upon the failure to have the agreement authorized by section 3 that the company may come to this court. Except in the particulars above stated, the board finds the evidence insufficient to ascertain what just compensation should be awarded. This condition is not relieved by the evidence adduced in this court. The two items mentioned were before the court in the Marion & Rye Valley case, 60 C. Cls. 230, 248. It is true here, as it was in that case, that “ No evidence was introduced before it to show that the alleged taking had subjected the company to any pecuniary loss or had deprived it of anything of pecuniary value, although the hearing before the board was commenced long after the period of alleged possession and control had expired.” 270 U. S. 286. On the other hand, it does appear that the company uniformly had an operating deficit for the first six months of each year because it was what was called “ a seasonal road,” its principal earnings being during the last half of the year, when the cattle and wool moved. During the first six months of the three-year “ test period ” the company invariably had a deficit. There is no proof that any order of the Director General or its observance added anything to the company’s loss or that the alleged “ undermain-tenance” was induced or affected by his orders. That the cost of- labor and of materials may have increased is quite likely owing to the general increases arising out of war conditions. As already stated, the question before us is whether the plaintiff’s property was taken; and if so, the just compensation it is entitled to receive. There can not be a judgment for nominal damages. Grant case, 7 Wall. 331, 338. No recoverable loss or damage is shown. The petition should be dismissed. And it is so ordered.
Moss, Judge; Geaham, Judge; and Booth, Judge, concur.