**FIBREBOARD PAPER PRODUCTS COR-PORATION and Stauffer Chemical Company, Appellants,**

v.

**UNITED STATES of America, Appellee.**

No. 19525.

United States Court of Appeals Ninth Circuit.

Jan. 21, 1966.

Edward E. Kallgren, Brobeck, Phleger & Harrison, San Francisco, Cal., John B. Lonergan, Allen B. Gresham, Lonergan & Jordan, San Bernardino, Cal., for appellants.

John W. Bonner, U. S. Atty., Las Vegas, Nev., Richard J. Dauber, Spec. Asst. U. S. Atty., for District of Nevada, Los Angeles, Cal., Edwin L. Weisl, Jr., Asst. Atty. Gen., Roger P. Marquis, Raymond N. Zagone, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before CHAMBERS, HAMLIN and BROWNING, Circuit Judges.

HAMLIN, Circuit Judge.

On October 13, 1952, the United States of America, appellee herein, filed a complaint in condemnation to acquire over 6900 acres of land for military purposes in connection with Lake Mead Base, Nevada. The Fibreboard Paper Products Corporation and Stauffer Chemical Company, appellants herein, owned certain valid mining claims which were in the general vicinity of the property described in the condemnation action, but which mining claims were not acquired in said proceeding. In 1921 the predecessors of appellants constructed a road about 26 miles in length from Stauffer's mining claims to a railroad siding. Fibreboard's mining claims were approximately ten miles from the railroad siding. About seven miles of this access road were within the area described in the complaint in condemnation. The question first arose as to whether appellants had any compensable property interest in the access road included within the area condemned. A separate trial was had in the United States District Court for Nevada to determine this question, and that court ruled that appellants did have a compensable property interest in the access roads condemned by the

United States and that such action "requires the payment of 'just compensation' * * * in accord with the Fifth Amendment to the Constitution of the United States." United States v. 9,947.71 Acres of Land, 220 F.Supp. 328, 337 (D.Nev. 1963). The United States took no appeal from this judgment.

A second trial was then had in the District Court before a jury to determine the amount of the compensation to which appellants were entitled. The jury rendered a verdict in favor of appellants in the sum of $168,700. It was the contention of appellants that they were entitled to interest on this amount from October 13, 1952, the date of the filing of the condemnation action, to the date of deposit. Appellee contended that interest should only be allowed from the date in 1959 when "actual expenditures were made by the defendants for a substitute facility" to the date of deposit. The United States District Court awarded interest at the "rate of 6% per annum from January 1st, 1959, to the date of the deposit into the registry of the court of the said sum of $168,700.00, plus said interest." Appellants timely appealed to this court "from that portion of the Judgment on the Verdict entered in this action on June 8, 1964, which allows interest on the principal sum of said Judgment from January 1, 1959, rather than from October 13, 1952." We have jurisdiction under 28 U.S.C. § 1291.

The United States also noticed an appeal from the judgment. However, on March 29, 1965, this appeal was dismissed on motion of the appellee. There is thus before us the very narrow question of from which date interest on the judgment is to be allowed.

There is very little dispute in the record as to the relevant facts. On October 13, 1952, the same day upon which the condemnation complaint was filed, the district court on motion of the appellee signed an "Order For Delivery of Possession" which read in part as follows:

"It is this 13th day of October, 1952, adjudged that all defendants to this action and all persons in possession or control of the property described in the complaint filed herein shall surrender possession of the said property, to the extent of the estate being condemned, to plaintiff immediately; * * *"

In the pretrial order there were contained certain stipulations of the parties, among them the following:

"(A) Date of taking: The government obtained an Order For Delivery of Possession in this case on October 13, 1952; however, the actual date upon which the government took possession has not been definitely ascertained at this time. For the purposes of this trial it is agreed that the property involved shall be valued in its condition as of October 13, 1952;

"(B) The legal description of the interest taken:

'* * * a legal and valid right of way in and to the road passing through the land taken as the Lake Mead Base which was "property" and which was taken by the United States in this condemnation action * * *.'

"(C) * * *

"11. From 1939 until some time between October 13, 1952 and October 13, 1953, Schumacher and Fibreboard used the roadway between the Lovell Mine and the Lovell siding upon the Union Pacific Railroad right of way. * * * From 1949 to the period between October 13, 1952 and October 13, 1953, the use of the road made by Schumacher and Fibreboard was limited to purposes of inspection and maintenance of Lovell Mine and required annual labor on the claims at Lovell Mine. In 1959, operation of the Lovell Mine was resumed by Fibreboard and has continued to date. In 1959, Fibreboard constructed a road from the Lovell Mine to the Apex siding of the Union Pacific Railroad;

"12. Between October 13, 1952, and October 13, 1953, the United States denied to Fibreboard and West End the access to, the use of, that portion of the road herein referred to lying within the boundaries of the Lake Mead Base, as shown on the map, a copy of which was attached to such Stipulation as Exhibit 'D' and is made a part hereof, and physically destroyed a portion thereof, and such denial has continued to date; * * * "

The pretrial order also contained the following:

"V. The following issue of fact and no other remains to be litigated upon the trial:

"(A) The issue of the compensable interest of Fibreboard and Stauffer having been determined by order of this Court dated and filed July 19, 1963, the only issue of fact remaining to be litigated is the just compensation payable to Fibreboard and Stauffer by reason of the condemnation action."

In Seaboard Air Line Ry. v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L. Ed. 664 (1923), the Supreme Court discussed the meaning of "just compensation" that must be paid where land is taken by the government in a condemnation action. The Court said:

"Just compensation is provided for by the Constitution. * * * The compensation to which the owner is entitled is the full and perfect equivalent of the property taken. * * * The only question here is whether payment at a subsequent date of the value of the land as of the date of taking possession is sufficient to constitute just compensation. * * * The case of United States v. Rogers et al., 255 U.S. 163, 41 Sup.Ct. 281, 65 L.Ed. 566, is a condemnation case, and it was held that the owner was entitled as a part of the just compensation to interest on the confirmed award of the commissioners from the time when the United States took possession. * * * Interest was allowed, not by virtue of state statute, but as constituting a part of the just compensation safeguarded by the Constitution. * * * Where the United States condemns and takes possession of land before ascertaining or paying compensation, the owner is not limited to the value of the property at the time of the taking; he is entitled to such addition as will produce the full equivalent of that value paid contemporaneously with the taking. Interest at a proper rate is a good measure by which to ascertain the amount so to be added." 261 U.S. at 304–306, 43 S.Ct. at 356.

The above stated rule has been followed in later cases. United States v. Dow, 357 U.S. 17, 24, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958) (dictum); United States v. Alcea Band of Tillamooks, 341 U.S. 48, 71 S.Ct. 552, 95 L.Ed. 738 (1950) (dictum); Albrecht v. United States, 329 U.S. 599, 602, 67 S.Ct. 606, 91 L.Ed. 532 (1946) (dictum); Phelps v. United States, 274 U.S. 341, 47 S.Ct. 611, 71 L.Ed. 1083 (1927). The Ninth Circuit also applied this rule in United States v. Johns, 146 F.2d 92 (9 Cir. 1944).

The right to interest from the date of taking to the date of payment thus being established, the next question is the determination as to when was the date of taking.

As shown above, in this case an order for immediate possession of the land to be taken was obtained upon the filing of the condemnation suit on October 13, 1952. The stipulation of the parties was that from some date between October 13, 1952, and October 13, 1953, appellants were denied access to their road and a portion of the road was physically destroyed. The fact that a new road was not built until 1959 does not appear to us to be determinative of the question in issue. When the government has not filed a declaration of taking pursuant to 40 U.S.C. § 258a, the date of

taking is the date upon which the government enters into possession. United States v. Dow, 357 U.S. 17, 24, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958). From a stipulation of the parties it would appear that the date of taking was at least October 13, 1953, and that interest upon the amount of the judgment should run from that date.

The government's contention is that in this case the "taking" was a "technical taking" and for that no compensation should be due. Its reliance on the case of Marion & Rye Valley Ry. v. United States, 270 U.S. 280, 46 S.Ct. 253, 70 L. Ed. 585 (1925), is misplaced. In that case there was a claim for compensation "for the alleged taking possession and use by the United States of its railroad during the period beginning December 28, 1917, and ending June 29, 1918." This claim was denied by the Supreme Court. However, the facts were entirely different from those in the case at bar. In that case the Supreme Court speaking of the Presidential proclamation, in reference to the possession and control of systems of transportation in the United States, said:

"He did not at any time take over the actual possession or operation of the railroad; did not at any time give any specific direction as to its management or operation; and did not at any time interfere in any way with its conduct or activities. The company retained possession and continued in the operation of its railroad throughout the period in question. The railroad was operated during the period exactly as it had been before, without change in the manner, method or purpose of operation." 270 U.S. at 282–283, 46 S. Ct. at 255.

The government also cites cases where publicly-owned roads have been taken and where it has been held that compensation

is only payable *"to the extent that, as a result of such taking, it (the public body) is compelled to construct a substitute highway."* [1] These cases are not apposite here where private property has been condemned.

That portion of the judgment of the district court which allows interest on the judgment from January 1, 1959, is reversed and the district court is directed to allow interest on the judgment at six per cent per annum from October 13, 1953, to the date of the deposit into the registry of the court of the sum of $168,700.00 plus said interest.

---

1. State of California v. United States, 169 F.2d 914, 924 (9 Cir. 1948). *E. g.,* United States v. Des Moines County, 148 F.2d 448, 160 A.L.R. 953 (8th Cir.), cert. denied, 326 U.S. 743, 66 S.Ct. 56, 90 L.Ed. 444 (1945); Jefferson County v. Tennessee Valley Authority, 146 F. 2d 564 (6 Cir.), cert. denied, 324 U.S. 871, 65 S.Ct. 1016, 89 L.Ed. 1425 (1945).