**Linda VAIZBURD and Arkady Vaizburd, Plaintiffs–Appellants,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 03–5154.

United States Court of Appeals, Federal Circuit.

DECIDED: Oct. 1, 2004.

Roger J. Marzulla, Defenders of Property Rights, of Washington, DC, argued for plaintiffs-appellants. With him on the brief was Nancie G. Marzulla.

Kathryn E. Kovacs, Appellate Section, Environment and Natural Resources Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were Thomas L. Sansonetti, Assistant Attorney General; and Richard A. Barrett.

Before RADER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and DYK, Circuit Judge.

Opinion for the court filed by Circuit Judge DYK. Opinion dissenting in part filed by Senior Circuit Judge FRIEDMAN.

DYK, Circuit Judge.

The appellants, Linda and Arkady Vaizburd ("the Vaizburds"), seek compensation for a physical taking of an easement. The Court of Federal Claims concluded that the government's sand deposit on the Vaizburds' property constituted the physical taking of a permanent easement, but it denied recovery on the ground that the Vaizburds failed to establish any decline in the fair market value of their property. *Vaizburd v. United States*, 57 Fed.Cl. 221 (2003). We agree with the Court of Fed-

eral Claims that the Vaizburds have not established that they are entitled to recover compensation for a decline in the market value of their property. However, we vacate the Court of Federal Claims' decision and remand for further consideration of the Vaizburds' claim that they are entitled to recover on a cost of cure theory.

## BACKGROUND

The Sea Gate Community ("Sea Gate") is a gated community on the southern side of Coney Island in Brooklyn, New York that includes seaside homes facing a private beach. The Vaizburds purchased their waterfront home on Oceanview Avenue in the Sea Gate Community for $320,000 in 1989. As part of the purchase, the Vaizburds acquired a seaward lot in the back of their home. This lot was completely submerged at the time of purchase. The Vaizburds' home is referred to as Lot–3 and the submerged lot is Lot–103.

In the early 1990s the Army Corps of Engineers (the "Corps") launched a project to replenish sand on Coney Island beaches (the "Coney Island project"), which had severely eroded over the years. By 1995, when the initial stage of the Coney Island project was completed, the Corps had deposited approximately three million cubic yards of sand on the Coney Island beaches. Meanwhile, since the mid 1990s, Oceanview Avenue lots in Sea Gate, including the Vaizburds' Lot–3 and Lot–103, experienced sand accretion. It is uncontested that this sand accretion was caused by the Coney Island project and that sand simultaneously diminished from the beach as it accumulated on the Oceanview Avenue lots. Oceanview Avenue residents affected by this sand accretion repeatedly complained to the Corps. By 2000, the Vaizburds' previously submerged property was covered in sand, forming a beach of sorts, and sand had also accumulated on Lot–3. On March 20, 2000, the

Vaizburds brought suit in the Court of Federal Claims, alleging that the accumulation of sand resulting from the Coney Island project constituted a compensable taking of easements on Lot–3 and Lot–103 and seeking $20,000,000 in damages.

After trial, the Court of Federal Claims concluded that a taking had occurred. The court found that "[t]here [was] no question that the result of the Corps' actions [was] the continuing presence of sand on the plaintiffs' property"; that "[i]t [was] the inevitable and recurring result of official government action in maintaining the Coney Island beaches"; and that "[t]he Corps ha[d] imposed an easement for the deposition of sand onto both lots 103 and 3." *Vaizburd,* 57 Fed.Cl. at 228. The court also found that sand accretion on the Vaizburds' property was "unattractive" and that the Vaizburds "have paid to have sand removed at least once from their backyard." *Id.* at 226.

Despite the Court of Federal Claims' conclusion that the Vaizburds "satisfied every element of a claim for the taking of an easement to deposit sand," *id.* at 233, it denied takings compensation because "there [was] no apparent damage" to the Vaizburds' property. *Id.* The court held that the Vaizburds were required to show actual damages because nominal damages were not available as "the waiver of sovereign immunity [for takings claims under the Tucker Act] does not extend to nominal or exemplary damages." *Id.* The court concluded that the Vaizburds "failed ... to prove that the presence of this sand has diminished the value of their property" and that "[t]hey cannot, therefore, prove a compensable taking." *Id.*

Indispensable to a market value analysis is a determination of the date of the taking. The court recognized that "[t]he date of taking is problematic in this case because the erosion and deposition were a

gradual process with cumulative effects of varying magnitude." *Id.* at 230. The court rejected both the Vaizburds' dates (a before-date of September 1995 and an after-date of October 1995) and the government's dates (a before-date of April 1996, and an after-date of June 1998, assuming a taking sometime in the interim), setting the date instead at December 31, 1995, when "the process of accretion had sufficient impact, *i.e.,* impeded the plaintiffs' access to the water, and was sufficiently noticeable and recurring to constitute a taking." *Id.*

The parties agreed on the after-value of the Vaizburds' property and differed simply as to the before-value.[1] *Id.* at 231. The Vaizburds' appraisal, prepared by Mr. Vaizburd himself, valued the property at $16,229,520 before the taking. *Id.* The Court of Federal Claims rejected this appraisal, explaining that this figure represented an "exaggerated view of the value" of the property (purchased only six years earlier for $320,000) and was based exclusively on a comparison of two other homes that were not "comparable" properties. *Id.* These other homes were in different neighborhoods of Brooklyn and were "superior" properties. *Id.* The court then considered the government's valuation, concluding that it was properly based on comparable house sales in the Sea Gate community.[2] *Id.* at 232. The government appraiser concluded that "[t]he before and after values were both $315,000." *Id.* The court explained that "the only possible relevant line of attack" against the gov-

ernment's appraisal was that the "after values were not as high as they would have been, but for the taking." *Id.* at 233. The court, however, noted that this argument was "not advanced by the plaintiffs, and, in any event, there [was] no evidence to support it." *Id.* at 233. Accepting the government's appraisal as based on a proper comparison of "the best comparable[] ... house sales along Oceanview Avenue," *id.* at 232, the court held that the Vaizburds had not proven that the market value of their property diminished as a result of sand accretion.

Finally, the court refused to award compensation based on a cost of cure approach, *i.e.,* it declined to award the costs of sand removal. The court stated:

> We do not have sufficient evidence from which to fashion a remedy from the costs related to sand removal: Costs to cure and other elements resultant from the taking are only admissible on the issue of just compensation if they are tied to their effect upon fair market value. Normally they would not be independent elements of compensation, in other words, unless it can be shown that the reduced after value assumes some continuing mitigation cost.

*Id.* at 233 n. 9 (internal quotation marks and citations omitted). This passage is unclear as to whether the court held either: (1) that as a legal matter cost of cure is only relevant to the extent that it affects the overall market value of the taken property; or (2) that the Vaizburds failed to

1. The Vaizburds accepted the government's initial after-value calculation of $320,000. During the course of the trial, the Court of Federal Claims chose a date of taking different than the government appraiser's date. On the instruction of the court, the government appraiser re-calculated the before and after-values to comport with the court's choice of the takings date, resulting in both a before and an after-value of $315,000, as noted in the text. On appeal, the Vaizburds

challenge the government's before-value, but do not contest the after-value, the revised and lower after-value being slightly more favorable to their claim.

2. The government appraiser considered four comparable sales from February 1992–December 1995, including at least two homes on Oceanview Avenue with "water up to the bulkhead," namely a submerged back lot.

supply sufficient evidence of cost of cure to support compensation under such a theory.

The court summarized the implications of its decision as follows: "This means only that the plaintiffs cannot recover on these or any other identical facts. This also means, however, that the government does not own an easement. At a minimum, this suggests that, if the facts change, a new claim would not be barred." *Id.* at 233 n. 12.

The Vaizburds filed a motion for reconsideration, which was denied on July 28, 2003. The Vaizburds timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

■ We review the Court of Federal Claims legal conclusions without deference, and we review the court's factual findings for clear error. *Ferreiro v. Unit-* *ed States,* 350 F.3d 1318, 1324 (Fed.Cir. 2003).

### I

■ Government action that causes sand accretion, flooding, or accumulation of other materials on a landowner's property may constitute a physical taking. *See, e.g., Pumpelly v. Green Bay & Miss. Canal Co.,* 80 U.S. (13 Wall) 166, 181, 20 L.Ed. 557 (1871).[3] However, "[n]ot every 'invasion' of private property resulting from government activity amounts to an appropriation" that is compensable as a taking. *Ridge Line, Inc. v. United States,* 346 F.3d 1346, 1355 (Fed.Cir.2003).[4] In order to warrant compensation as a taking (as distinguished from a tort), the governmentally induced invasion must meet a two-part test. First, a property owner must prove that the asserted government invasion of property interests allegedly effecting a taking "was the predictable result of the government action," either because it was

---

**3.** *See also United States v. Kan. City Life Ins. Co.,* 339 U.S. 799, 70 S.Ct. 885, 94 L.Ed. 1277 (1950) (landowner's property flooded due to the government's act of raising the level of a stream for navigational purposes); *United States v. Dickinson,* 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947) (landowner's property flooded due to government's act of raising level of river); *United States v. Cress,* 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746 (1917) (landowner's property flooded by overflow caused by government's dam project); *United States v. Welch,* 217 U.S. 333, 30 S.Ct. 527, 54 L.Ed. 787 (1910) (landowner's property flooded due to government's dam); *United States v. Lynah,* 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539 (1903) (landowner's property flooded due to government's construction of dam); *Pumpelly,* 80 U.S. (13 Wall.) at 166 (landowner's property flooded due to government construction of a dam); *see also Ridge Line, Inc. v. United States,* 346 F.3d 1346 (Fed.Cir.2003) (flooding of landowner's property caused by government construction project that increased storm drainage onto the land); *Barnes v. United States,* 210 Ct.Cl. 467, 538 F.2d 865 (1976) (flooding of landowner's

property caused by government's dam constructions); *Eyherabide v. United States,* 170 Ct.Cl. 598, 345 F.2d 565, 566 (1965) (invasion of landowner's property by Navy's dropping of fuel tanks and shooting of shells and rockets onto the property); *Fonalledas v. United States,* 123 Ct.Cl. 483, 107 F.Supp. 1019, 1022 (1952) (some of landowner's property was "buried under mud and silt, [while] others were flooded with salt water and permeated with salt" due to government's canal construction); *Coates v. United States,* 117 Ct.Cl. 795, 93 F.Supp. 637, 637 (1950) ("heavy layer of sand" deposited on landowner's property as result of government project to improve navigability of river); *Cotton Land Co. v. United States,* 109 Ct.Cl. 816, 75 F.Supp. 232 (1948) (flooding of landowner's property due to government's dam construction).

**4.** *See, e.g., Sanguinetti v. United States,* 264 U.S. 146, 150, 44 S.Ct. 264, 68 L.Ed. 608 (1924); *Nat'l By–Products v. United States,* 186 Ct.Cl. 546, 405 F.2d 1256, 1275 (1969); *Columbia Basin Orchard v. United States,* 132 Ct.Cl. 445, 132 F.Supp. 707, 709 (1955).

"the direct or necessary result" of the act or because it was "within contemplation of or reasonably to be anticipated by the government." *Id.* at 1356; *see also, e.g., Sanguinetti,* 264 U.S. at 150, 44 S.Ct. 264; *John Horstmann Co. v. United States,* 257 U.S. 138, 146, 42 S.Ct. 58, 66 L.Ed. 171 (1921); *Barnes,* 538 F.2d at 871; *Eyherabide,* 345 F.2d at 570; *Columbia Basin,* 132 F.Supp. at 709; *Cotton Land Co.,* 75 F.Supp. at 233–34. Second, the property owner must show that "the government's interference with any property rights of [the plaintiff] was substantial and frequent enough to rise to the level of a taking," *Ridge Line,* 346 F.3d at 1357, or, in other words, that the interference was "inevitably recurring," *Nat'l By–Products,* 405 F.2d at 1273. *See also, e.g., Dickinson,* 331 U.S. at 749, 67 S.Ct. 1382; *Cress,* 243 U.S. at 328, 37 S.Ct. 380; *Barnes,* 538 F.2d at 870.

There is no contention here by the government that the Vaizburds failed to establish these two requirements. Because the government concedes that the sand accretion amounted to a taking, the only issue on appeal is the amount of compensation, if any, to be awarded.

## II

■■■ The Court of Federal Claims properly held that it could not award nominal damages if the Vaizburds failed to prove actual damages. *Marion & Rye Valley Ry. Co. v. United States,* 270 U.S. 280, 282, 46 S.Ct. 253, 70 L.Ed. 585 (1926); *see also Brown v. Legal Found. of Wash.,* 538 U.S. 216, 236, 123 S.Ct. 1406, 155 L.Ed.2d 376 (2003). A comparison of the property's market value before and after a taking is one appropriate method of valua-

tion in circumstances such as these. *See United States v. Miller,* 317 U.S. 369, 376, 63 S.Ct. 276, 87 L.Ed. 336 (1943). However, we agree with the Court of Federal Claims that the Vaizburds failed to show that the sand accretion caused a decline in the market value of their property.

### A

Here, both the government's and the Vaizburds' appraisals employed a comparable sales methodology in determining the market value of the property before and after the taking. The Court of Federal Claims rejected the Vaizburds' before-value of the property at $16,229,520 because it was based on comparisons with what "seem[ed] to be ... very different type[s] of house[s]" in different parts of Brooklyn. *Vaizburd,* 57 Fed.Cl. at 231. Conversely, the court accepted the government's valuations, finding that the appraiser was a "fully qualified" and "experienced" appraiser and that the valuations were based on "the best comparables in this case ... [which] are house sales along Oceanview Avenue." *Id.* at 232. The Vaizburds argue, however, that the court's holding as to actual damages was erroneous for several reasons. None of these arguments has merit.

First, the Vaizburds concede that "the usual way of ascertaining damages" in easement takings claims is to calculate the property's market value based on comparable sales, (Br. for Appellant at 12), but they also claim that comparable sales was an inappropriate methodology for this case.[5] The Vaizburds correctly point out that the comparable sales approach is not the only method of determining market

---

**5.** To the extent that the Vaizburds challenge the credibility of the government's appraisal on the theory that the government appraiser considered sales of houses that were not com-

parable, this argument is without merit. As noted previously, the government appraiser chose other houses on Oceanview Avenue.

value, *see, e.g., United States v. Commodities Trading Corp.,* 339 U.S. 121, 126, 70 S.Ct. 547, 94 L.Ed. 707 (1950); *United States v. Cors,* 337 U.S. 325, 333–34, 69 S.Ct. 1086, 93 L.Ed. 1392 (1949); *Unites States v. Causby,* 328 U.S. 256, 261, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946); *United States v. General Motors Corp.,* 323 U.S. 373, 379, 65 S.Ct. 357, 89 L.Ed. 311 (1945), but the Vaizburds have not offered any evidence, or even suggested, an appropriate alternative approach for computing market value in this case. Indeed, the Vaizburds' own appraisal report rejected other methods of calculating market value. Much less have the Vaizburds established that the Court of Federal Claims erred in using comparable sales to determine the market value of their property. *See, e.g., Seravalli v. United States,* 845 F.2d 1571, 1575 (Fed.Cir.1988) ("[Trial] courts necessarily must have considerable discretion to select the method of valuation that is most appropriate in the light of the facts of the particular case.").

■ Second, the Vaizburds argue that "[f]aced with two dramatically different appraisal reports, neither of which the court was obliged to accept, the court should have determined the valuation of the easement itself." (Br. of Appellant at 24.) Again, the Vaizburds provide no support for the proposition that a court may not adopt one party's credible appraisal over the other party's less credible appraisal. The cases upon which the Vaizburds rely are inapposite because they involve circumstances where a court did not find either appraisal credible. *See, e.g., Yank-*

ton Sioux Tribe v. United States,* 224 Ct. Cl. 62, 623 F.2d 159 (1980). Here, the Court of Federal Claims did not conclude that neither valuation was credible. Rather, the court properly rejected the Vaizburds' appraisal as unreliable and properly adopted the government's appraisal as credible. The court was under no obligation to appoint an independent expert to remedy the Vaizburds' deficiencies of proof. The Vaizburds' pro se status did not exempt them from the usual evidentiary obligations.

■ Finally, the Vaizburds argue that the government's "appraisal does not determine the value of the subject property before and after the taking of the easement for deposit of sand.... [I]nstead [it] simply attempts to measure the infinitesimal change in the value of the subject property over a period of approximately 30 days." (Reply Br. of Appellant at 10.) The Vaizburds are correct that the government appraiser measured the decrease in market value over a one-month period beginning December 1995 and ending January 1996. Their argument—that the appraisal should have calculated the property's market value before the sand accretion initially began and after the taking was complete—may have some merit. However, this argument is raised for the first time on appeal, and then only in their reply brief. Indeed, the Vaizburds' own appraisal used the same methodology, calculating the before-value as of the beginning of September 1995 and the after-value as of the beginning of October 1995.[6] The Vaizburds waived any objec-

---

**6.** In fact, the Vaizburds conceded at oral argument that they had not submitted evidence of the market value before the beginning of sand accretion:

APPELLANTS' COUNSEL: What the [market value] test really describes is not the time before and after the taking. What you

would value, what the appraiser should value in such a case, is the value of the fee simple with no easement in the before and the value of the fee simple minus the easement in the after, and that wasn't done here . . .

tion to the government's appraisal methodology in this respect.

Therefore, we hold that the Court of Federal Claims' conclusion that the sand accretion did not diminish the market value of the Vaizburds' property is not clearly erroneous.[7]

## B

■ The Vaizburds alternatively contend that they should be awarded compensation on a cost of cure theory of recovery, namely that they should be compensated for the cost of removing the accreted sand from their property.[8] The Court of Claims' ground for rejecting cost of cure as a measure of compensation is unclear. The court stated that it did "not have sufficient evidence from which to fashion a remedy from the costs related to sand removal," but it then went on to say that "[c]osts to cure ... would not be independent elements of compensation." *Vaizburd*, 57 Fed. Cl. at 233 n. 9. The Court of Federal Claims' opinion is open to two separate interpretations. On the one hand, the court may have intended to hold that it had considered the evidence submitted as to cost of cure and reached the

factual conclusion that it did "not have sufficient evidence from which to fashion remedy," *i.e.*, that the Vaizburds had not presented sufficient evidence to establish that they reasonably incurred costs to remove the accreted sand. Alternatively, the opinion may be read as holding that cost of cure is an inappropriate independent measure of valuation and may only be considered for its "effect upon fair market value" of the property itself. If the Court of Federal Claims refused to consider cost of cure as a viable measure of compensation for the taking of an easement because there was no effect on market value, then the court erred.

■ Our recent decision in *Ridge Line* reaffirmed that the cost of cure can be an appropriate measure of compensation. The Court of Federal Claims in *Ridge Line* held that even if the plaintiff had established that periodic water invasions of its property were temporary takings, they were not compensable because the plaintiff could not show that these intrusions diminished its property value. *Ridge Line*, 346 F.3d at 1352. On appeal, we rejected this approach. *Id.* at 1354–55. We explained

COURT: But the problem is that your client didn't present any such evidence.
APPELLANTS' COUNSEL: Well, that is a problem, certainly. . . .

**7.** In this connection, the Court of Federal Claims did not err in rejecting testimony that the sand accretion rendered the Vaizburds' home "uninhabitable." *Vaizburd*, 57 Fed. Cl. at 225. The court held that to the extent that the home was uninhabitable, it was a "result of temporary blockage of a [sewer] system which was already problematic for reasons unrelated to the additional sand." *Id.* at 226.

**8.** The dissent argues that we should reject the cost of cure theory on the ground that it was not raised below. Four circumstances taken together convince us otherwise. (1) Cost of cure is not a separate claim but merely a

separate theory for computing the amount of takings liability. *See Ridge Line*, 346 F.3d at 1358–59. (2) The Vaizburds were proceeding pro se, and their pleadings should accordingly not be held to the same standard as parties represented by counsel. *Forshey v. Principi*, 284 F.3d 1335, 1357 (Fed.Cir.2002) (*en banc*) ("[W]here a party appeared pro se before the lower court, a court of appeals may appropriately be less stringent in requiring that the issue have been raised explicitly below."). (3) The *Ridge Line* case upon which the Vaizburds primarily rely was not decided until after the Court of Federal Claims' decision. *See id.* at 1356. (4) The Court of Federal Claims addressed the cost of cure theory on the merits in its opinion.

As noted below, however, the Vaizburds must rest on the existing factual record in asserting this theory of recovery.

that once a plaintiff has established that a taking occurred, it is entitled to compensation for its costs in preventing the damage caused by government actions, holding that "damages may be assessed based on [the landowner's] cost in constructing prudent flood control measures." *Id.* at 1359; *see also Eyherabide*, 345 F.2d at 570–71 (allowing "compensation for . . . the loss of improvements and the cost of placing the property in its pre-taking condition . . . [and for] clearing and restoring the property in the condition for rebuilding").

Similarly, the Supreme Court in *Dickinson* upheld the Fourth Circuit's damages decision "based on the cost of protective measures which the landowners might have taken to prevent the loss." 331 U.S. at 747, 67 S.Ct. 1382. The plaintiff in *Dickinson* sued under the Tucker Act to recover compensation for a taking of their land resulting from government-induced flooding that caused erosion of their land. *Id.* The Fourth Circuit held that the government's dam construction, which raised the level of the river and led to flooding and erosion of the plaintiff's property, "amount[ed] to the taking of easements for which compensation was due." *United States v. Dickinson*, 152 F.2d 865, 871 (4th Cir.1946). The Fourth Circuit approved the district court's award of "reasonable cost[s] . . . of protective work adequate to prevent the damage by erosion if installed prior to the raising of the level of the river," which it concluded "would have been sound economy, in view of the character and nature of the property, to have made the expenditure." *Id.* at 870. The Supreme Court's opinion approved this approach to valuation by affirming the award "based on the cost of protective measures which the landowners might have taken to prevent the loss." 331 U.S. at 747, 67 S.Ct. 1382.

Thus, the cost of cure can be an appropriate measure of compensation. In rewarding the cost of cure, of course, expenditures are only compensable if they are "reasonable." *See Ridge Line*, 346 F.3d at 1359. In other words, the Vaizburds must establish that it "would have been sound economy, in view of the character and nature of the property, to have made the expenditure[s]" for sand removal. *Dickinson*, 152 F.2d at 870.

Although there was testimony that the Vaizburds incurred sand removal costs,[9] and the record includes some estimates of the cost of further sand removal,[10] the Vaizburds have not pointed to any evidence of the specific amounts paid for such sand removal. On remand, the Court of Federal Claims should decide whether evidence in the existing record supports an award of compensation on a cost of cure theory. We reach no conclusion as to the sufficiency of the evidence in the Court of Federal Claims record. This issue should

---

9. The Court of Federal Claims found that the Vaizburds "have paid to have sand removed at least once from their back yard. . . . [Another Sea Gate resident] testified that he pays every year to have sand removed to maintain the level well below his bulkhead. . . . Apparently some of the other owners along Oceanview Avenue have also paid to have sand removed on occasion." *See Vaizburd*, 57 Fed. Cl. at 226. The government appraiser similarly concluded that "it has been necessary to have a large amount of sand removed annually, at considerable expense." (J.A. 1408.)

10. *See* (J.A. at 1408 ("The owner of the subject sent us copies of estimates for removal of sand from the rear yard of the subject, in addition to an estimate for repairs for damage to the house from the sand, as well as an estimate to install a see-through fence along the top of the bulkhead. . . . The total of the cost estimates was $37,059")). (June 24, 1998 Appraisal by Negalia Appraisals, Inc.).

be addressed in the Court of Federal Claims in the first instance.

## CONCLUSION

For the foregoing reasons, we vacate the Court of Federal Claims' decision and remand for further proceedings in accordance with this opinion.

*VACATED AND REMANDED*

## COSTS

No costs.

FRIEDMAN, Senior Circuit Judge, dissenting in part.

I agree with and join the Background section and Parts I and II.A of the court's opinion, which uphold the Court of Federal Claims' "conclusion that the sand accretion did not diminish the market value of the Vaizburds' property [as] not clearly erroneous." *See Vaizburd v. United States,* 57 Fed.Cl. 221, 233 (2003). I disagree, however, with the ruling in Part II.B that remands the case to that court to determine whether the Vaizburds can recover just compensation based on the cost of removing the sand from lot 3. I would affirm the judgment of the Court of Federal Claims in its entirety.

As far as I can tell, the Vaizburds never sought recovery on that theory in the Court of Federal Claims. During the lengthy and extensive proceedings in that court, their sole claim to recovery was based on the alleged lower value of their property after the taking of the easement. Based on the sale price of other properties in Brooklyn, which they asserted were, but the trial court held were not, comparable to their property, they contended that before the taking their property was worth more than $ 16 million, but that after the taking its value was reduced to the low $300,000's. *See* 57 Fed.Cl. at 231–33.

In neither their pre-trial Memorandum of Contentions of Fact and Law nor their sixty-one page Motion for Reconsideration and Relief from Judgment (filed after the trial court had issued its opinion) did the Vaizburds even suggest, let alone argue, that the just compensation could be based on the alternative theory that they were entitled at least to the cost of removing the sand from their lot. They did not even contend that the removal cost could be an element in the before-and-after value method. In their briefs to this court, the Vaizburds cite only the government's appraisal report for record evidence concerning the cost of previous efforts to remove sand from the subject properties. *See* Reply Br. at 2 (citing JA 1408, 1428–30).

The Court of Federal Claims' sole discussion of the cost of removing sand in its twenty-page opinion was the following footnote:

> We do not have sufficient evidence from which to fashion a remedy from the costs related to sand removal: "[C]osts to cure and other elements resultant from the taking are only admissible on the issue of just compensation if they are tied to their effect upon fair market value." Nichols on Eminent Domain, 4A § 14.A.04[2][a]. Normally they would not be independent elements of compensation, in other words, unless it can be shown that the reduced after value assumes some continuing mitigation cost.

57 Fed.Cl. at 233 n. 9.

Since the Vaizburds never sought recovery on this theory in the Court of Federal Claims, that court's statements on the point are dicta. The court's remand seemingly is designed to correct what it views as a possible legal error by the trial court in "refus[ing] to consider cost of cure as a viable measure of compensation for the taking of an easement because there was no effect on market value." Whatever may be the merits of that issue, in the circumstances here I see no reason for the

remand the court orders for the trial court to reconsider that theory of recovery.

To be sure, the Vaizburds represented themselves in the Court of Federal Claims. This, however, is not the typical pro se case in which a court condones a litigant's failure to meet certain procedural or technical requirements. As the Court of Federal Claims explained:

> Despite lack of counsel, plaintiffs' legal argument and presentation did not suffer. They understood the relevant principles and Arkady Vaizburd, who handled the courtroom presentation, was very skilled at presenting evidence and making relevant objections.

57 Fed.Cl. at 222 n. 1.

The Vaizburds' failure to raise the cost-of-removal issue before the Court of Federal Claims was not a forgiveable oversight or inadvertence but appears to have been a deliberate choice. I would hold them to that choice, and not give them a further opportunity to correct what they may now view as a mistaken strategy in the trial court.