**UNITED STATES of America,
Appellee,**

v.

**CHESAPEAKE GARDENS, INC., and
Chesapeake Gardens, Inc., No. 2,
Appellants.**

**No. 12504.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 7, 1968.

Decided Nov. 22, 1968.

John J. Geraghty, Raleigh, N. C. (Poyner, Geraghty, Hartsfield & Townsend, Raleigh, N. C., John A. Pryor, Joseph M. Wyatt, and Wyatt & Jones, Baltimore, Md., on brief), for appellants.

S. Billingsley Hill, Atty., Dept. of Justice (Clyde O. Martz, Asst. Atty. Gen., Roger P. Marquis, Anne S. Bell, Attys., Dept. of Justice, Stephen H. Sachs, U. S. Atty. and Ralph J. Luttrell, Sp. Asst. U. S. Atty., on brief), for appellee.

Before SOBELOFF, BOREMAN and BUTZNER, Circuit Judges.

SOBELOFF, Circuit Judge:

This appeal concerns the proper measure of compensation in a condemnation case instituted by the Government.

The Capehart Act, 42 U.S.C. § 1594 (a), provides that Wherry Act (12 U.S.C. § 1748 et seq.) housing may be acquired by the Government in the discretion of

the Secretary of Defense.[1] Pursuant to this authorization, condemnation proceedings were instituted against Chesapeake Gardens, Inc., and Chesapeake Gardens, Inc., No. 2, owner-mortgagors of a Wherry leasehold interest, and they now appeal from a judgment rendered in their favor by the District Court on a jury verdict of $184,000.

The Wherry Act was passed in response to the acute housing shortage existing in the area of most military installations. It provided for leasing of Government-owned land at nominal rentals under long-term leases to "Owner" corporations which would construct and operate the needed housing. Owner corporations are subject to Federal Housing Administration regulations on such matters as rents, rate of return, and certain aspects of operation, and mortgages made to financing institutions by the Owners are insured by the FHA up to 90% of the estimated cost of construction.

The Owners assign error to the reception of testimony that they had realized the sum of $569,000 by reason of the fact that the mortgage loan exceeded the actual cost of construction by that amount. The Owners do not dispute the fact that there were excess mortgage proceeds and that the excess has been retained by them, but they contend that this evidence was irrelevant and prejudicial and did not enter into the estimates of value made by any of the expert witnesses who testified at trial. The Government counters that the evidence is indeed relevant on the issue of what a "willing, prudent buyer and seller could contemplate or expect in the way of income and rental ceilings in the future." [2]

The Government reasons that the fact that there were excess mortgage proceeds might be considered by the FHA as justification for reducing rentals presently being charged by the Owners or as ground for refusing increases if applied for in the future.[3] The Owners rejoin that no statute, rule, or regulation having the force of law has conferred upon the FHA the power unilaterally to reduce rents.

---

1. We are advised by counsel that this is the last of the series of Wherry Act condemnation cases. See, e. g., United States v. Benning Housing Corporation, 276 F.2d 248 (5 Cir. 1960); Buena Vista Homes, Inc. v. United States, 281 F.2d 476 (10 Cir. 1960); United States v. Leavell & Ponder, Inc., 286 F.2d 398 (5 Cir.), cert. denied, 366 U.S. 944, 81 S.Ct. 1674, 6 L.Ed.2d 855 (1961); United States v. Tampa Bay Garden Apartments, Inc., 294 F.2d 598 (5 Cir. 1961); United States v. Certain Interests in Property in Cumberland County, 296 F.2d 264 (4 Cir. 1961); United States v. 190.71 Acres of Land in Lake County, Illinois, 300 F.2d 52 (7 Cir. 1962); Fairfield Gardens, Inc. v. United States, 306 F.2d 167 (9 Cir. 1962); Likins-Foster Monterey Corp. v. United States, 308 F.2d 595 (9 Cir. 1962); United States v. Certain Interests in Property in Borough of Brooklyn, 326 F.2d 109 (2 Cir. 1964); Winston v. United States, 342 F.2d 715 (9 Cir. 1965); Sill Corporation v. United States, 343 F.2d 411 (10 Cir.), cert. denied, 382 U.S. 840, 86 S.Ct. 88, 15 L.Ed.2d 81 (1965).

2. The District Judge's pre-trial order provided in part:

10. Evidence of the actual cost of construction shall be admissible, not as a measure of value, nor as evidence of what it would cost to replace these improvements at the date of taking, but solely as evidence as to what a willing, prudent buyer and seller could contemplate or expect in the way of income and rental ceilings in the future.

3. The Administrative Rules of FHA, Section V, paragraph 4(a) provides as follows:

(a) No charge shall be made by the mortgagor for the accommodations offered by the project in excess of a rental schedule to be filed with the Commissioner and approved by him or his duly constituted representative prior to the opening of the project for rental, which schedule shall be based upon a maximum average rental fixed prior to the insurance of the mortgage, *and shall not thereafter be changed except upon application of the mortgagor to, and the written approval of the change by, the Commissioner.* (Emphasis supplied.)

We deem it unnecessary, in determining that the proffered evidence was admissible, to decide whether the FHA could upon its own initiative reduce rents. We adhere to the rule announced by Judge Boreman in another Wherry Act condemnation case. United States v. Certain Interests in Property in Cumberland County, 296 F.2d 264 (4 Cir. 1961). There he stated that "this court has in the past favored a broad rule of admissibility and consideration of evidence in condemnation cases; the only condition has been that there be a showing that willing vendees and vendors would deem such evidence or information relevant in their negotiations."

It seems patent to us that in his negotiations a prospective buyer would find the fact of excess mortgage proceeds highly relevant because the FHA might well be influenced adversely thereby in the event of a future request for a rental increase. The Ninth Circuit in Winston v. United States, 342 F.2d 715 (1965), upheld the admission of evidence of excess mortgage proceeds and rejected the argument now urged by the Owners that this fact could not possibly affect future rental charges. The conclusion of the Tenth Circuit in Sill Corporation v. United States, 343 F.2d 411, cert. denied, 382 U.S. 840, 86 S.Ct. 88, (1965),[4] is in accord with that reached by the Ninth.

█ The other major contention of the Owners is that the Government's witnesses, in computing "just compensation," improperly deducted from capitalized value the amount of a certain reserve fund. The Owners were required by their charters to deposit $39,750 annually into a fund which was designed to assure the mortgagee that funds would be available to replace certain assets at the end of their respective useful lives. On the date of the taking, the accumulated reserve had a balance of $296,337 on deposit with the mortgagee. Subsequently, the Government and the mortgagee executed an agreement for the payment of the full amount of the accumulated fund to the Owners, and this was done.

The Owners insist that the fund was their asset and that the Government is therefore not entitled to a deduction by virtue of the release of the fund to them. The Government asserts, and we agree, that the deduction of this amount by the Government's witnesses in computing the value of the Owners' interest was correct because a prospective buyer would be required upon acquisition of the Owners' interest to deposit $296,337 of his own funds with the mortgagee or be held in default on the mortgage. The Owners acknowledge that the fund depleted by the payment made to them would have to be replenished and maintained by a prospective purchaser. They argue however that to permit a deduction of the amount accumulated results in a double deduction because the annual contributions to the fund have been treated by the expert witnesses as deductions in determining the income figure to be capitalized. In view of the fact that the Owners have been permitted to draw down and pocket the accumulated re-

4. There Chief Judge Murrah wrote:
"Under the lease contract, the FHA, as we have seen, was empowered to regulate rates, charges, capital structure, rate of returns, and methods of operations, and it was certainly relevant for a prospective purchaser to know that in the event increased rentals were needed in order to maintain the level of capitalized income, the FHA would invoke its policy in the face of excess mortgage proceeds. This was the extent to which the excess mortgage proceeds and windfall was used in the Government's case, and it was not irrelevant for that purpose." 343 F.2d at 420.
The appellants rely upon a dictum in a footnote to the Fort Hamilton case, United States v. Certain Interests in Property in Borough of Brooklyn, 326 F.2d 109, 116 n. 7 (2 Cir. 1964). We are not persuaded that they read the footnote correctly, but to the extent that it may be construed as inconsistent with our ruling, we decline to follow the dictum.

serve, it is difficult to perceive how there has been a wrongful double deduction.

We think that the Government's experts committed no error in making the deduction, because the offer of a willing buyer would doubtless be depressed by the known requirement that he deposit with the mortgagee a fund sufficient to offset the accumulated depreciation. No prudent prospective purchaser would ignore the fact that in acquiring the property he obligated himself to restore the reserve fund. Nothing in the Wherry cases cited to us by the Owners is inconsistent with this reasoning.

We have examined the other contentions raised in the Owners' briefs and find them without merit. Accordingly, the judgment of the District Court is

Affirmed.