Joseph **SERAVALLI**, John Seravalli, Jr., and the Brookchester Corporation, Plaintiffs–Appellees,

v.

The **UNITED STATES**, Defendant–Appellant.

No. 87–1566.

United States Court of Appeals, Federal Circuit.

May 4, 1988.

---

J. Daniel Sagarin, Hurwitz & Sagarin, P.C., Milford, Conn., argued for plaintiffs-appellees.

J. Keith Burt, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for defendant-appellant. With him on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and M. Susan Burnett, Asst. Director. Also on

the brief was Mel Belin, Office of Gen. Counsel, Dept. of Housing and Urban Development, Washington, D.C., of counsel.

Before FRIEDMAN, DAVIS and MAYER, Circuit Judges.

FRIEDMAN, Circuit Judge.

In this appeal from the United States Claims Court, the United States challenges as excessive the damages awarded against it for breach of contract. The government's principal contention is that the Claims Court used an impermissible method of calculating damages. The government also contends that in any event the damages were excessive. We reject both of these contentions and therefore affirm.

I

In February 1984, the appellees, as high bidders, entered into a contract to purchase for $126,500 an apartment complex in New Haven, Connecticut, that the Department of Housing and Urban Development (HUD) was selling under the United States Housing Act of 1937, 42 U.S.C. § 1437f (1982) (The Act). Under section 8 of the Act, HUD provides rental assistance to the owners by guaranteeing reimbursement if a unit is vacant. Section 8 also requires the property to be maintained as low income rental housing for fifteen years. The sales contract required the purchaser, within six months of the sale, to make certain repairs to the apartments that were required to improve their condition to the level at which HUD would allow the increased rentals shown in the prospectus. Although HUD estimated that the repairs would cost $57,200, the actual cost was approximately $45,000.

The closing was set for April 6, 1984. HUD refused to close, however, and unilaterally terminated the contract on June 18, 1984. On October 14, 1984, HUD sold the property to a subsequent bidder for $203,000.

The appellees filed suit in the Claims Court seeking damages reflecting, *inter alia*, the difference between the contract price and the fair market value of the property on the date of closing. *Seravalli v. United States*, No. 639–84C (Cl.Ct. June 19, 1987) (unpublished order). The government conceded liability, and the case went to trial solely on the issue of damages.

Both sides presented testimony relating to the three primary methods for computing fair market value: (1) comparable sales, (2) replacement cost, and (3) income capitalization. The government's expert relied primarily on the comparable sales method, and the appellees' expert primarily on the income capitalization method. The values reflected in the testimony ranged from the government expert's figure of $150,000 to the subsequent purchaser's estimate of $400,000. The court noted that within a year after the purchase, the subsequent purchaser had received unsolicited offers of up to $500,000.

The values under the comparable sales method ranged from $140,000 to $355,300. The replacement cost value was $304,000. The income capitalization method produced values from $140,000 to $300,000. (The court listed ranges for income capitalization from $319,046 to $393,133 but did not explain how it reached those figures.)

Relying primarily on the income capitalization method, the court found that the fair market value of the property at the time of the closing was $330,240. The court stated that "this valuation figure is both fair and equitable, because while it is more than the $319,000 comparable sales estimate in finding of fact # 29, it is less than the comparable sales of $355,300 in finding of fact 33." The court subtracted from the $330,240 the contract price of $126,500 and awarded the appellees damages of $203,740.

The court found that both experts accepted the income capitalization approach as "a most reliable method of determining the market value of the subject property." The court noted that, both before and after the sale, the property did not have significant vacancies, and that there was an extreme shortage of low and moderate income housing in the area resulting in a long waiting list for apartments in the project. The court accepted the appellees' estimated net operating income (NOI) of

$41,280 as more reliable than the government's figure of $25,670 because the government expert "overestimated the vacancy rate and certain expenses causing a reduction in the NOI." The court found that the appropriate capitalization rate was between 12 and 13 percent, and used 12.5 percent.

The court "found the expert opinion of plaintiff's [sic] 64-year-old real estate broker expert, Mr. Jarvis Nichols, most persuasive." In analyzing the evidence relating to comparable sales, the court found that Mr. Nichols "used more than one comparable sale," while the government's expert, "Mr. John Leary used only one comparable sale giving the explanation that he could not find any other comparable sales," although Mr. Leary testified that "he was in fact aware of several other comparable property sales which he had utilized in another HUD valuation." The court found that the appellees' expert (Mr. Nichols) "approached his valuation from a conservative point and in many instances rounded down or discounted comparables substantially, resulting in a lower than otherwise fair market value."

## II

■ The government's principal contention is that the proper method for determining the fair market value of the property involved in this case was the comparable sales method, and that since there was adequate evidence of such sales in the record, the Claims Court erred in basing its award principally upon the income capitalization evidence. The government asserts that *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 104 S.Ct. 2187, 81 L.Ed. 2d 1 (1984), mandates use of the comparable sales method if there is evidence of such sales.

A. *Kirby Forest* provides no support for the government's argument. The issue in that case was whether the government had taken property on the date on which it filed a condemnation complaint or on the date on which, following the district court's award of compensation, the government deposited the amount awarded with the court.

The answer determined the date from which interest on the award ran. The passage from *Kirby Forest* upon which the goverment relies and which it quotes reads as follows:

> "Just compensation," we have held, means in most cases the fair market value of the property on the date it is appropriated. *United States v. 564.54 Acres of Land*, 441 U.S. 506, 511–513 [99 S.Ct. 1854, 1857–1858, 60 L.Ed.2d 435] (1979).[14]

14 Other measures of "just compensation" are employed only "when market value [is] too difficult to find, or when its application would result in manifest injustice to owner or public. . . ." *United States v. Commodities Trading Corp.*, 339 U.S. 121, 123 [70 S.Ct. 547, 549, 94 L.Ed. 707] (1950).

467 U.S. at 10, 104 S.Ct. at 2194.

Nothing in this passage or anywhere else in the opinion even remotely suggests that the Supreme Court was indicating that analysis of comparable sales, if available, is the proper method for determining fair market value. The dictum in *Kirby Forest* which the government quotes merely repeated the settled general standard of fair compensation in taking cases—"the fair market value of the property on the date it is appropriated"—while at the same time noting that "in some cases, this standard fails fully to indemnify the owner for his loss. Particularly when property has some special value to its owner because of its adaptability to his particular use, the fair-market-value measure does not make the owner whole." *Id.* n. 15. Indeed, the court pointed out that "[n]one of the discussion in this opinion is intended to modify either the manner in which the fair-market-value standard is interpreted and applied or the test for determining when the fair-market-value standard must be supplanted by other formulae, see n. 14 *supra*." *Id. Kirby Forest* gave no indication of how the "fair market value" of condemned property should be determined.

The other cases the government cites similarly do not support its position. Many of them involved property that either produced no income, or the income from which was far too speculative to rely on—thus making income capitalization impossible or

inappropriate. *See United States v. 3,727.-91 Acres of Land,* 563 F.2d 357 (8th Cir. 1977); *United States v. Brinker,* 413 F.2d 733 (10th Cir.1969); *United States v. 15.0 Acres of Land,* 468 F.Supp. 310 (E.D.Ark. 1979). None of them held that analysis of comparable sales is the appropriate method of evaluation. Indeed, in the only case the government cited involving the valuation of apartments, the court used the income capitalization method. *Buena Vista Homes, Inc. v. United States,* 281 F.2d 476 (10th Cir.1960).

The government also cites *"United States v. 3.70 Acres of Land,* 709 F.2d 1012, 113–14 (Fed.Cir.1983)." We have been unable to find such a case. Presumably the government meant to cite *United States v. 33.90 Acres of Land,* 709 F.2d 1012 (5th Cir.1983), where the court stated that "[i]n general, comparable sales provide the best evidence of market value of condemned property." *Id.* at 1013–14 (citation omitted). That decision also does not enunciate the strict rule the government is seeking, and we decline to accept that statement as the rule of this circuit.

■ **B.** We are unwilling to restrict the trial courts to any single basis for determining fair market value. Those courts necessarily must have considerable discretion to select the method of valuation that is most appropriate in the light of the facts of the particular case. It may be a single method or some combination of different methods.

■ We agree with the statement in *United States v. 179.26 Acres of Land,* 644 F.2d 367 (10th Cir.1981)—a case the government cites—that "the law is not wedded to any particular formula or method for determining the fair market value as the measure of just compensation.... It may be based on comparable sales, reproduction costs, capitalization of net income or an interaction of these determinants." *Id.* at 372 (quoting *Sill Corp. v. United States,* 343 F.2d 411, 416 (10th Cir.), *cert. denied,* 382 U.S. 840, 86 S.Ct. 88, 15 L.Ed. 2d 81 (1965).

■ **C.** In this case, the court heard testimony from seven witnesses and viewed the property. The court properly noted that any appraisal method "must take into account all market conditions affecting price, for example, the availability of financing, the marketing techniques used, and the relevant real estate market." *Seravalli,* slip op. at 4. Although the government criticizes the Claims Court determination that the appellees' expert was more "persuasive" than the government's expert, that was a judgment the court had the right to make.

The court's findings in this case are amply supported by the record. The property involved had a negligible vacancy rate, and the government guaranteed the rents. Although the property was low income housing, there was a substantial shortage of such property and a long waiting list of tenants.

### III

■ Relying on *Buena Vista Homes, supra,* the government contends that even under the Claims Court method of valuation the award was excessive because the court should have deducted the cost of necessary repairs in determining fair market value. The government points to the court of appeals statement in that case that this "method of valuation [income capitalization] contemplates that the property is in good condition and capable of producing the income to be capitalized." 281 F.2d at 479–80.

Read in the light of the issue before the court in *Buena Vista,* however, the quoted statement does not have the broad sweep the government ascribes to it. The case involved a challenge to an allegedly inadequate condemnation award. The court stated that the reserve fund of the contractor was insufficient to cover the necessary repairs, and that "the value arrived at by capitalization of income would have to be adjusted by the deduction of the repair and replacement cost and the addition of the amount of the reserve fund.... [H]ere the cost of the needed repairs and replace-

ments exceeded the reserve fund." *Id.* at 480.

In the present case, in contrast, the record shows that the reserve available for repairs from the anticipated mortgage far exceeded the cost of repairs. The appellees' expert accounted for the required repairs in his income capitalization calculation. The Claims Court committed no error in not explicitly deducting the cost of the repairs in determining fair market value.

CONCLUSION

The judgment of the United States Claims Court is

AFFIRMED.

MAYER, Circuit Judge, concurring.

Where, as in this case, none of the primary methods for establishing fair market value alone affords the trial court evidence sufficient to confidently find the value, the complex, unwieldy exercise of rationalizing evidence under all arguably pertinent methods may be appropriate. The court's review shows that the Claims Court's result, in the nature of a jury verdict, is not clearly erroneous. But, as I read the court's opinion, nothing said affects a trial court's authority to limit the proof it will receive on valuation to fewer than all conceivable theories. This subject is inherently subjective to a significant extent, but the degree of speculativeness increases from comparable sales to replacement cost to income capitalization. Except, perhaps, in unique situations hypothesized in *Kirby Forest Indust., Inc. v. United States,* 467 U.S. 1, 10 nn. 14, 15, 104 S.Ct. 2187, 2194 n.n., 14, 2196, 81 L.Ed.2d 1 (1984), if a trial court finds true, reliable comparables are available, as they apparently were not here, there is no reason for it to collect evidence under other theories, fraught as they are with estimations, predictions and downright guesses.