**NOT FOR PUBLICATION**

MAR 10 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos. CC-19-1166-GTaL |
| | CC-19-1167-GTaL |
| TERRY LEE FLEMING, SR., | (Consolidated Appeals) |
| Debtor. | Bk. No. 6:17-bk-19513-MW |
| HAVASU LAKESHORE INVESTMENTS, LLC, | |
| Appellant, | |
| v. | |
| TERRY LEE FLEMING, SR.; HAVASU LANDING, LLC, | **MEMORANDUM**[*] |
| Appellees. | |

Argued and Submitted on January 30, 2020
at Pasadena, California

Filed – March 10, 2020

Appeal from the United States Bankruptcy Court

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value. *See* 9th Cir. BAP Rule 8024-1.

for the Central District of California

Honorable Mark S. Wallace, Bankruptcy Judge, Presiding

Appearances:     Martin A. Eliopulos of Higgs Fletcher & Mack LLP
argued for Appellant; Michael B. Reynolds of Snell &
Wilmer LLP argued for Appellee Havasu Landing, LLC;
James Edward Till of LimNexus LLP argued for Appellee
Terry Lee Fleming, Sr.

Before: GAN, TAYLOR, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Secured creditor Havasu Lakeshore Investments, LLC ("HLI") appeals from an order confirming the chapter 11[1] plan proposed by debtor Terry Lee Fleming, Sr. ("Debtor") and co-proponent, Havasu Landing, LLC ("Landing"). In confirming the plan, the bankruptcy court determined that HLI would receive the indubitable equivalent of its approximately $5.4 million secured claim through: (1) a cash payment of $500,000 on the effective date; (2) transfer of 49 units of real property from Landing, consisting of 46 lots and 3 finished home sites (the "Landing Property"), valued by the bankruptcy court at $3,694,000; and (3) five annual payments of $241,124.54 with interest at 5%.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

HLI argues that the court erred in valuing the Landing Property by adopting a methodology which failed to account for the necessary costs and time to sell the lots. As a result, HLI contends that the plan does not provide it with the indubitable equivalent of its secured claim. HLI also argues that the bankruptcy court erred in determining that the plan was feasible without any evidence that Debtor could make the annual payments.

On review of the bankruptcy court's decision, we decline to require any specific valuation methodology for purposes of determining indubitable equivalence. However, plan treatment consisting of cash payments in addition to the transfer of real property at the bankruptcy court's valuation does not provide HLI with the indubitable equivalent of its secured claim under § 1129(b)(2)(A)(iii). We also agree that the bankruptcy court's finding that the plan was feasible was not supported by evidence in the record. Accordingly, we VACATE the order confirming the Plan and REMAND to the bankruptcy court for further proceedings consistent with this decision.

## FACTS

### A. Prepetition Events

In 2003, Debtor invested in a real estate project with HLI, involving an 80-acre manufactured home park called Vista Del Lago, located in Lake Havasu, California. Sometime after 2009, Vista Del Lago defaulted on a

3

loan and appeared to be headed toward bankruptcy.

While acting as an agent of HLI, Debtor purchased the defaulted loan and acquired Vista Del Lago through foreclosure. After the foreclosure, Debtor became involved in litigation against HLI and various individuals associated with the project which culminated in a February 2015 California state court judgment for constructive fraud and punitive damages against Debtor and in favor of HLI in the amount of $3,659,343.

Debtor formed Landing in 2010 and was its sole member until after the judgment was entered in 2015. At the time of the judgment, Landing owned Vista Del Lago and other real property in Lake Havasu. Within weeks of the judgment, Debtor transferred a 55% interest in Landing and the managing member position to his son, Terry Fleming, Jr.

After obtaining the judgment, HLI began efforts to collect. It recorded an abstract of the judgment in Orange and Riverside counties and obtained a charging order on Debtor's membership interest in Landing. HLI also obtained a debtor's examination lien and a turnover order directing Debtor to immediately deliver all funds held in the name of the Terry L. Fleming Sr. Family Trust, which were approximately $3.1 million in 2015. After learning that Debtor had named his daughter as successor trustee of the trust, HLI obtained a similar debtor's examination lien and turnover order against Debtor's daughter.

B.     **The Bankruptcy Case**

1.     **Debtor's Assets and HLI's Claim**

In November 2017, Debtor filed a chapter 11 petition. His amended schedules indicated total assets of $5,931,985.78, held personally or in his trust, which included his personal residence in Orange County, a rental property in Riverside County, a 45% membership interest in Landing, a 9.25% equity interest in HLI, and approximately $1.6 million in cash and cash equivalents. Debtor also scheduled approximately $600,000 in retainers held by various professionals.

As of the petition date, HLI's claim, including pre-petition interest and attorneys' fees, was approximately $4.7 million. HLI asserted that its claim was secured by nearly all of Debtor's property and by property held in Debtor's trust.

In March 2018, Debtor filed a motion to allow his counsel to draw down its retainer on a monthly basis. Although Debtor disputed the extent of HLI's lien on the retainer funds, he argued that HLI had a nearly 34% equity cushion based on the value of its other collateral.[2] The court agreed and determined that even if HLI had a security interest on the retainer, its secured claim was adequately protected because the fair market value of

---

[2] Debtor subsequently filed an adversary proceeding contesting the extent and validity of HLI's asserted liens on property held by the Terry Lee Fleming Sr. Family Trust. As of the petition date, the trust held Debtor's residence, the rental property, and approximately $1.38 million in cash and cash equivalents.

HLI's other collateral was in excess of $7 million.

In December 2018, HLI filed a motion for adequate protection and for a super-priority administrative expense claim. HLI asserted that while its claim had increased to approximately $5.2 million due to accrued post-petition interest, the value of Debtor's assets had diminished to approximately $5.1 million. HLI argued that Debtor's use of cash and counsel's drawdown of the retainer, combined with new estimates of value in Debtor's Plan and disclosure statement, left HLI's claim without adequate protection.

Debtor objected and argued that the court made factual findings of value in its decision on the drawdown order and that HLI had not offered any new evidence of diminished property values. Debtor also submitted a declaration stating that as of January 2018, the fair market value of HLI's asserted collateral was approximately $6.8 million. The court denied the motion.

### 2. Debtor's Plan and HLI's Objection

In November 2018, Debtor filed his Second Amended Plan ("Plan") which proposed to pay all claims in full over a five-year period. The Plan proposed to pay HLI's claim through: (1) an effective date payment of $500,000; (2) transfer of the Landing Property, which Debtor valued at $3,753,100; and (3) five annual payments, with interest at 5%, equal to the remaining balance of HLI's secured claim after the cash payment and

transfer of Landing Property. The Plan stated that the credit to be applied for the Landing Property would be determined by the court and that "[f]or the avoidance of doubt, no lien is being stripped by virtue of the Plan."

With the exception of HLI, all voting creditors accepted the plan. HLI objected to confirmation and argued that the value of the Landing Property did not account for necessary holding costs or the time required to sell all of the lots, which HLI argued could be as long as 24 years. HLI stated that it had ceased operations in 2010 and was insolvent, so requiring it to pay taxes, management fees, and HOA dues for the Landing Property would not be fair and equitable. HLI argued that it would not receive the indubitable equivalent of its claim because the Plan shifted the risk of selling the Landing Property to HLI without assurance that it would recover the full amount of its claims. HLI also objected that the Plan was not feasible and was not proposed in good faith.

### 3.    Confirmation of the Plan

In April 2019, the bankruptcy court held an evidentiary hearing on confirmation of Debtor's Plan and heard expert testimony regarding the value of the Landing Property.

HLI's expert, Mr. Detling, developed two financial projection models which used a discounted cash flow ("DCF") methodology. Mr. Detling used the Debtor's proposed retail value of $65,000 for each of the 46 undeveloped lots, but assumed that they would take between 12 and 24

7

years to sell. He applied discount rates of 14% and 20% and concluded that the present value of the Landing Property was between $443,743 and $1,384,628.

Debtor's expert, Mr. Vanderley, developed a "net aggregate value" model which used the retail value of $65,000 for each undeveloped lot and then deducted estimated sales costs and holding costs for the typical sales cycle. Mr. Vanderley explained that the typical sales cycle, as it pertained to any individual lot, would be in the range of six to nine months. Under the "net aggregate value" method, Mr. Vanderley initially concluded that the value of the Landing Property was between $3,123,000 and $3,166,000.

Mr. Vanderley also prepared a model using a DCF methodology. Unlike Mr. Detling, he projected that all of the lots could be sold within five years. Using discount rates of 5.6% and 10.9%, he concluded that the value of the Landing Property was between $2,924,000 and $3,227,000. However, Mr. Vanderley testified that the DCF method was inferior to the "net aggregate value" method because it relied on too many unknown variables.

In a supplemental declaration, Mr. Vanderley updated his models to correct a formula error and to adjust the retail price of the 46 undeveloped lots to $71,500, based on current prices provided by Terry Fleming, Jr. Using the retail price of $71,500, Mr. Vanderley concluded that the total value of the Landing Property was between $3,694,000 and $3,737,000

using the "net aggregate value" method, and between $3,182,000 and $3,515,000 using the DCF method.

The bankruptcy court did not find Mr. Detling's testimony credible and rejected his valuations. The court instead adopted the lower of Mr. Vanderley's "net aggregate values," which used the retail price of $71,500 and assumed a nine-month sales cycle. The court determined the total value of the 46 lots and 3 finished home sites to be $3,694,000.

In confirming the Plan, the bankruptcy court rejected HLI's argument that transfer of the Landing Property unfairly shifted risk without some form of adequate protection such as an "equity cushion." The court stated:

> The conveyance of real property to HLI under the Plan is performance itself, not a promise of future performance, so adequate protection is not applicable. There is no need for protection to be provided against the risk that promised future performance will not occur because such promised performance has already occurred. Similarly, the concept of an "equity cushion" has no place because HLI will own all the equity in the conveyed real property itself.

However, because Debtor challenged the validity and extent of HLI's security interests in the pending adversary proceeding, the court required the Plan to provide for a springing lien on Debtor's residence and the rental property, to ensure the remaining balance of the claim would be secured in the event that Debtor was successful.

Based on the value of the Landing Property and the accrued interest on the HLI claim, the court also required the five annual payments to be increased from $191,784 to $241,124.54. HLI timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(L). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err in determining that the Plan provided HLI with the indubitable equivalent of its claim?

Did the bankruptcy court err in determining that the Plan was feasible?

## STANDARDS OF REVIEW

We review the bankruptcy court's decision to confirm a chapter 11 plan for an abuse of discretion. *Marshall v. Marshall (In re Marshall)*, 721 F.3d 1032, 1045 (9th Cir. 2013). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in the record. *Traffic School.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

A bankruptcy court's determination of property value is a question of fact which we review for clear error. *Arnold & Baker Farms v. United States (In re Arnold & Baker Farms)*, 85 F.3d 1415, 1421 (9th Cir. 1996). Factual

10

findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). The ultimate conclusion of indubitable equivalence is a question of law which we review de novo. *In re Arnold & Baker Farms*, 85 F.3d at 1421. De novo review requires that we consider the matter as if no decision had been previously rendered. *Kashikar v. Turnstile Capital Mgmt., LLC (In re Kashikar)*, 567 B.R. 160, 164 (9th Cir. BAP 2017).

We review a bankruptcy court's finding of feasibility for abuse of discretion. *First S. Nat'l Bank v. Sunnyslope Hous. Ltd. P'ship (In re Sunnyslope Hous. Ltd. P'ship)*, 859 F.3d 637, 647 (9th Cir. 2017), *as amended* (June 23, 2017), *cert. denied*, 138 S. Ct. 648 (2018).

## DISCUSSION

HLI's primary argument on appeal is that the Plan does not provide HLI with the indubitable equivalent of its secured claim because the bankruptcy court erred in valuing the Landing Property. HLI argues that the court should not have adopted Mr. Vanderley's values derived from the "net aggregate" method and instead should have adopted Mr. Vanderley's values derived from the DCF method.

Valuations of property are factual findings to which we apply a deferential standard of review. *In re Arnold & Baker Farms*, 85 F.3d at 1421. This deference extends to the bankruptcy court's choice of valuation methodology. *Taffi v. United States (In re Taffi)*, 96 F.3d 1190, 1193 (9th Cir.

11

1996) (*en banc*) (recognizing various methods to establish value but leaving the determination to the trial court); *Estate of Simplot v. C.I.R.*, 249 F.3d 1191, 1197 (9th Cir. 2001); *Seravalli v. United States*, 845 F.2d 1571, 1575 (Fed. Cir. 1988) ("[C]ourts necessarily must have considerable discretion to select a method of valuation that is most appropriate in the light of the facts of the particular case. It may be a single method or some combination of different methods.").

HLI argues that the BAP has mandated the use of DCF methodology when there is no immediate market for the sale of real property. We disagree. In *Arnold & Baker Farms*, we noted that bankruptcy courts had recognized three procedures for valuing land to be surrendered: (1) liquidation value; (2) market value; and (3) fair value. 177 B.R. 648, 656 (9th Cir. BAP 1994). We stated that the "fair value" method was an acceptable valuation procedure under the circumstances of that case, but we did not require any specific method for valuing property to be transferred as the indubitable equivalent of a secured claim. *Id.* at 657.

The choice of valuation methodology should be based on the facts of each case and is within the bankruptcy court's sound discretion. Regardless of how the bankruptcy court determines the value of property to be transferred to a secured creditor, it must also determine whether a proposed transfer is the indubitable equivalent of the creditor's secured claim. *In re Arnold & Baker Farms*, 85 F.3d at 1421 ("[T]he finding of a trial

12

court of a particular value of real property . . . will not necessarily determine whether the creditor will receive the indubitable equivalent of its secured claim.").

We decline to require any specific valuation methodology for indubitable equivalence and we do not determine whether the valuation here was clearly erroneous because, as we conclude below, transfer of the Landing Property for a dollar-for-dollar reduction of HLI's claim does not provide HLI with the indubitable equivalent of its secured claim.

## A.    The Plan Cannot Be Confirmed Under § 1129(b)

A bankruptcy court can confirm a plan over a creditor's objection only if the plan does not discriminate unfairly and is fair and equitable with respect to each class of claims that has not accepted the plan. § 1129(b)(1). To be "fair and equitable" with regard to secured claims, the plan must provide:

> (I)    (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
>
> (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such

13

holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (I) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

§ 1129(b)(2)(A).

Treatment under any of the three clauses in § 1129(b)(2)(A) requires payment in full of the allowed secured claim. 7 COLLIER ON BANKRUPTCY ¶ 1129.04 [2] (Alan N. Resnick & Henry J. Sommer, eds. 16th ed. rev. 2019). The bankruptcy court confirmed the Plan as providing HLI with the indubitable equivalent of its secured claim under § 1129(b)(2)(A)(iii).

The Ninth Circuit has held that if a plan proposes to provide a creditor with the indubitable equivalent of its claim through a partial transfer of collateral, such transfer must compensate the creditor and "must insure the safety of or prevent jeopardy to the principal." *In re Arnold & Baker Farms*, 85 F.3d at 1422. In such a case, the creditor has no recourse against its remaining collateral in the event that a sale of the property does not yield proceeds equal to the bankruptcy court's valuation. *Id.* The

transfer is therefore not "completely compensatory." *Id.* (citing *In re Murel Holding Corp.*, 75 F.2d 941, 942 (2d Cir. 1935)). The Circuit held that "[t]o the extent a debtor seeks to alter the collateral securing a creditor's loan, providing the 'indubitable equivalent' requires that the substitute collateral not increase the creditor's risk exposure." *Id.*

The bankruptcy court noted that unlike the transfer of collateral in *Arnold & Baker Farms*, the real property transferred under Debtor's Plan is not collateral and not estate property. The Plan also specifically provides that no liens are affected. The bankruptcy court essentially considered the property transfer as payment and reduced the remaining claim by its determined value. The bankruptcy court then considered whether the remaining amount of HLI's claim would be adequately secured by the remaining collateral and required springing liens in the event that Debtor prevailed in the adversary proceeding.

The Plan does not ensure full payment of HLI's secured claim because it does not provide compensation for the necessary time to sell the Landing Property and it unfairly shifts the risk of selling the Landing Property to HLI. As a result, the Plan does not satisfy the indubitable equivalent standard of § 1129(b)(2)(A)(iii).

Although *Arnold & Baker Farms* involved a partial surrender of collateral, the fundamental issue in that case is that deeming a claim satisfied through a transfer of property necessarily limits the creditor's

ability to look to its other collateral to satisfy any remaining portion of the claim in the event that the property is ultimately sold for less than the appraised value. The creditor is "forced to assume the risk of receiving less on the sale without being able to look to the remaining undistributed collateral for security." *In re Arnold & Baker Farms*, 85 F.3d at 1422.

The present case presents the same concern as *Arnold & Baker Farms*. Despite the Plan provision that no liens are affected, by deeming the transfer to satisfy a portion of the claim, HLI is forced to assume the risk that sales of the Landing Property will not yield the appraised value. HLI will be unable to look to its other collateral for any shortfall.

"Experience has taught us that determining the value of real property at any given time is not an exact science." *Id.* at 1421. If the court's valuation of the Landing Property is not accurate or if the market for the Landing Property does not behave as predicted over the next five years, HLI may not recover the value fixed by characterizing the transfer as "payment."[3]

At the time of confirmation, HLI's claim was fully secured by collateral valued at approximately $7,000,000. Under the Plan, HLI is forced to assume the risk that proceeds from the Landing Property might be less

---

[3] Although HLI also clearly has the benefit of potential increased property values, the downside risk makes it less than "indubitable" that HLI will receive the value of its secured claim.

than the court's valuation, without any recourse against its collateral if sales proceeds prove inadequate. The Plan provision that HLI retains its liens is illusory because by deeming the claim partially satisfied, HLI can only look to its collateral to satisfy the remainder of its claim after the property transfer.

Of particular concern, the Plan also fails to adequately compensate HLI for the necessary time to sell the Landing Property. Mr. Vanderley valued the Landing Property based on a six- to nine-month sales cycle for any individual lot, but also projected that it would take approximately five years for HLI to sell all 49 units transferred under the Plan. Thus, his valuation "as of the date of transfer" was not equivalent to a cash payment on that date because it ignored his own testimony regarding the anticipated market absorption.

If the Plan instead proposed that Landing would sell the lots and Debtor would make deferred cash payments from his Landing distributions, Debtor would be required to compensate HLI with interest in order to satisfy § 1129(b)(2)(A)(I) and Landing would pay the carrying costs. Interest is necessary to provide the secured creditor with the value, as of the effective date, of its allowed secured claim. Transfer of the Landing Lots as "payment," does not compensate HLI for the approximately five years needed to sell the lots, a time period established by Debtor's own expert.

**B. The Bankruptcy Court Abused Its Discretion By Finding The Plan Feasible**

Section 1129(a)(11) requires that the bankruptcy court find that confirmation is not likely to be followed by liquidation or the need for further financial reorganization. To demonstrate that a plan is feasible under § 1129(a)(11), a debtor must show a "reasonable probability" of success. *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 787 F.2d 1352, 1364 (9th Cir. 1986). The Debtor does not have to prove that success is inevitable and a "relatively low threshold of proof will satisfy" as long as evidence supports a finding of feasibility. *Computer Task Grp., Inc., v. Brotby (In re Brotby)*, 303 B.R. 177, 191 (9th Cir. BAP 2003).

HLI argues that the bankruptcy court erred in finding the Plan feasible because Debtor's financial projections contain computational errors and do not provide evidence that Debtor has a reasonable probability of making the increased annual payments. We agree.

The court determined that the Plan was feasible based on the financial projections attached to the Debtor's declaration in support of confirmation. Those projections seem to indicate that Debtor has sufficient funds to make the five annual payments of $191,784 and possibly even the increased payments required by the court. However, the financial projections contain clear mathematical errors, including a failure to account for the first annual payment in the cumulative balance for the 12 months ending in December 2019, and erroneous total annual personal expenses

18

for Debtor in the remaining four years. When the errors are corrected, Debtor's projections evidence an inability to make annual payments at either the proposed amount of $191,784 or the required amount of $241,124. There is no evidence in the record to support Debtor's ability to make the annual Plan payments to HLI, and therefore the court's finding of feasibility constitutes an abuse of discretion.

## CONCLUSION

Debtor's Plan does not provide HLI with the indubitable equivalent of its secured claim and is not feasible on the record before us. For the reasons set forth above, we VACATE the bankruptcy court's order confirming the plan and REMAND for further proceedings consistent with this decision.