**John H. BANKS, et al., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 99–4451 L.**

United States Court of Federal Claims.

Nov. 2, 2004.

## OPINION AND ORDER

HEWITT, Judge.

Before the court, on remand from the Federal Circuit, is Plaintiffs' Motion for Summary Judgment on Liability (Pls.' Mot.).[1] On appeal, the Federal Circuit determined that plaintiffs' physical takings claims were not time-barred and reversed and remanded plaintiffs' claims for further proceedings. *Banks v. United States*, 314 F.3d 1304, 1305–06 (Fed.Cir.2003). Further to the Federal Circuit's guidance and for the following reasons, plaintiffs' motion is DENIED.

### I. Background [2]

Plaintiffs are thirty-six owners of property in Michigan "along a four and one-half mile stretch of the eastern shoreline of Lake Michigan south of St. Joseph's Harbor." *Banks v. United States*, 314 F.3d 1304, 1306 (Fed.Cir.2003) (*Banks II*). Plaintiffs allege that the United States Army Corps of Engineers (Corps), by its construction and maintenance of certain jetties at St. Joseph Har-

---

1. The responsive briefing includes: Defendant's Opposition to Plaintiffs' Motion for Summary Judgment (Def.'s Opp.) and Plaintiffs' Reply to Defendant's Opposition to Motion for Summary Judgment (Pls.' Reply).

2. For additional factual background, see *Banks v. United States*, 314 F.3d 1304 (Fed.Cir.2003); *Banks v. United States*, 49 Fed.Cl. 806 (2001).

bor, "ha[s] interfered with the natural littoral flow of sand and river sediment and caused damage to the lakebed" which has effected "'a gradual and continued taking'" of plaintiffs' shoreline property. *Id.*

The activities of the Corps affecting St. Joseph Harbor and shoreline began in the 1830s. *Id.* In 1903, the Corps completed construction of the St. Joseph Harbor jetties. *Id.* "Between 1950 and 1989, the Corps installed sandtight steel sheet piling to the jetties." *Id.* The parties agree that the harbor jetties exacerbate the naturally occurring erosion of the shorelines along the Great Lakes. *Id.* In particular, the jetties in St. Joseph Harbor have "'significantly increased the annual rate of shoreline erosion,' which, without human intervention, occurs naturally at a rate of approximately one foot per year." *Id.* (quoting *Banks v. United States,* 49 Fed. Cl. 806, 815–16, 818 (2001) (*Banks I*)). Since the mid–1970s, the Corps has "'acknowledged the longstanding and significant exacerbation of erosion caused by its harbor jetties.'" *Id.* (quoting *Banks I,* 49 Fed.Cl. at 817).

Pursuant to Section 111 of the River and Harbor Act of 1968, 90 Pub.L. No. 90–483, 82 Stat. 731, 735 (1970),[3] the Corps prepared a proposal in 1974 to mitigate the shoreline erosion attributable to the jetties in St. Joseph Harbor. *Id.* The Corps' mitigation efforts included: (1) more than fifteen years of providing fine sand for "feeder beaches 'to nourish the areas suffering shore damage,'" *Banks II,* 314 F.3d at 1306–07, (2) depositing coarser sediments with longer retention time on the St. Joseph shoreline at least five times between 1986 and 1993, *see id.,* and (3) "placing barge-loads of large rocks into the lake in 1995." *Id.* at 1307. Three technical reports prepared by the Corps and issued respectively in 1996, 1997 and 1999 addressed the progress of the Corps' mitigation efforts in St. Joseph and "collectively indicate[d] that the [shoreline] erosion was permanent and irreversible." *Id.* at 1307.

On appeal, the Federal Circuit found that "[w]ith the mitigation efforts underway, the accrual of plaintiffs' claims remained uncertain until the Corps' 1996 Report, 1997 Report and 1999 Report collectively indicated ... the permanence of the [shoreline erosion]." *Id.* at 1310. Accordingly, the Court of Appeals concluded that because "[t]he statute of limitations did not begin to run until the Corps issued the 1996, 1997, and 1999 Reports[,] ... plaintiffs['] ... complaints ... [were] timely." *Id.* (reversing the trial court's decision in *Banks I,* 49 Fed. Cl. at 825, that the plaintiffs' claims accrued no later than 1989).

On remand, plaintiffs move the court for summary judgment on the issue of liability on the basis that defendant's admission to some responsibility for the shoreline erosion is sufficient to establish a taking. *See* Pls.' Mot. at 7.

II. Discussion

A. Standard of Review

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rules of the United States Court of Federal Claims (RCFC) 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Coast Fed. Bank v. United States,* 323 F.3d 1035, 1037 (Fed.Cir.2003). A fact that might significantly affect the outcome of the litigation is material. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. When an underlying factual question arises in a case involving "complex scientific principles" or requiring expert witness testimony, summary judgment may be improper. *Howes v. Med. Components, Inc.,* 814 F.2d 638, 643 (Fed.Cir.1987). Disputes over facts that are not outcome determinative will not preclude the entry of summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A party opposing a summary judgment motion cannot rest on the mere allegations or denials of his pleading, but must

---

**3.** Section 111 authorizes the Secretary of the Army "to investigate, study, and construct projects for the prevention or mitigation of shore damages attributable to Federal navigation

works." The River and Harbor Act of 1968, 90 Pub.L. No. 90–483, § 111, 82 Stat. 731, 735 (1970).

"'go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file" designate "specific facts showing that there is a genuine issue for trial."'" *Omega Eng'g, Inc, v. Raytek Corp.,* 334 F.3d 1314, 1320 (Fed.Cir.2003) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citation omitted)).

The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party demonstrates an absence of a genuine issue of material fact, the burden then shifts to the non-moving party to show that a genuine issue exists. *See Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1562 (Fed.Cir.1987). To defeat summary judgment, "[t]he party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,* 731 F.2d 831, 836 (Fed.Cir.1984). "Mere denials or conclusory statements are insufficient." *Id.* The court must resolve any doubts about factual issues in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefits of all favorable inferences and presumptions run. *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984).

"[W]hen appropriate to the circumstances," summary judgment may be rendered in a takings case. *Avenal v. United States,* 100 F.3d 933, 936 (Fed.Cir.1996).

## B. The Issue of Liability

The Fifth Amendment to the United States Constitution provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. The Supreme Court has recognized that the government may take private property either by physical invasion or by regulation. *See Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1014–15, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (stating that the Takings Clause was interpreted to apply only to physical takings until 1922, when the Supreme Court stated that a regulation that "goes too far" will be recognized as a taking (citation omitted)).

The claims before the court allege that a physical taking of the plaintiffs' respective properties has occurred. A physical taking occurs "when the government encroaches upon or occupies private land for its own proposed use." *Palazzolo v. Rhode Island,* 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001).

The Federal Circuit recently explained in *Vaizburd v. United States,* 384 F.3d 1278 (Fed.Cir.2004) that a takings plaintiff must prove that the government action complained of meets a two-part test:

> In order to warrant compensation as a taking . . ., the governmentally induced invasion must meet a two-part test. First, a property owner must prove that the asserted government invasion of property interests allegedly effecting a taking "was the predictable result of the government action," either because it was "the direct or necessary result" of the act or because it was "within contemplation of or reasonably to be anticipated by the government." Second, the property owner must show that "the government's interference with any property rights of [the plaintiff] was substantial and frequent enough to rise to the level of a taking," or, in other words, that the interference was "inevitably recurring."

*Id.* at 1282–83 (citations omitted).

Plaintiffs argue that, because "the necessary facts already have been ascertained and the conclusion as to causality has been resolved," the government's liability for plaintiffs' takings claims has been established. Pls.' Mot. at 7. In support of this argument, plaintiffs quote this court's opinion in *Banks I*:

> Based on the evidence presented by the parties, the court determines that, by 1989, the gradual process of shoreline erosion set into motion by the government had resulted in a permanent taking and the

extent of the damage had become reasonably foreseeable.

*Id.* at 825. Plaintiffs reason that the phrase, " '[s]et into motion by the government,' is the language of causation." Pls.' Mot. at 7. The court in *Banks I*, however, did not decide the issue of liability. Rather, the court addressed defendant's motion to dismiss plaintiffs' takings claims for untimeliness. *See Banks I*, 49 Fed.Cl. at 807–08. Consistent with the governing legal standard of review, the court "presume[d]" that the well-pleaded factual allegations in plaintiffs' complaints were true. *See Banks I*, 49 Fed.Cl. at 808–09 (citing *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977)) ("In reviewing the sufficiency of a complaint in the context of a motion to dismiss we, of course, treat all of the well-pleaded allegations of the complaint as true.") and *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988) (stating that the court "normally consider[s] the facts alleged in the complaint to be true and correct" in reviewing a motion to dismiss for lack of subject matter jurisdiction pursuant to FRCP 12(b)(1)).[4]

Plaintiffs also contend that the Corps "is 100 percent responsible for all [of the] erosion [occurring on each plaintiff's property] because [the Corps'] structure is the only total barrier to littoral drift since 1680[sic]."[5] Pls.' Mot. at 7. Reasoning that there would be no erosion "but for [the Corps'] jetties," *id.* at 11, plaintiffs argue that "[t]he Corps' admission of responsibility to any extent admits to total responsibility," *id.* at 7.

In a spare opposition brief, defendant argues that plaintiffs' claims are not appropriate for summary judgment because material facts are in dispute. Def.'s Opp. at 2. Pointing specifically to the declaration of Dr. Robert Nairn, attached to the opposition brief, defendant states that Dr. Nairn is "a knowledgeable affiant whose expert testimony shows the disputed nature of [p]laintiffs' assertion[s]" of allegedly uncontroverted facts.

*Id.* Dr. Nairn states, in pertinent part, in his declaration that:

(a) Since the retreat of the glaciers more than 10,000 years ago, the Plaintiffs' shoreline has been naturally eroding.

(b) The natural gradient of increasing longshore sand transport coupled with the local glacial geology, and specifically the existence of irreversibly erodible cohesive sediment, explain the naturally erosional character of this shore.

(c) On cohesive shores, there is no straightforward relationship between reduction in sand supply (and resulting impact to sand cover) and the response of erosion rates.

(d) Since 1971 at the latest, the Corps has replaced all sand trapped (i.e., delivered by both the river and littoral system) by the harbor or otherwise lost as a result of the harbor and navigation channel management. It was determined that the earlier forecast of compensation of 110,000 [cubic yards per year of sand] by the Corps in 1973 was an overestimate. The actual compensation for trapped sand has been less than this amount, but nevertheless, sufficient.

. . . .

(f) When shore-based shore protection is constructed on a naturally eroding cohesive shore, the eventual disappearance of beaches is inevitable as long as the protection remains in place. This explains the loss of many of the beaches in the Plaintiffs' area.

Def.'s Opp. Attach. at 1–2 (Declaration of Dr. Robert B. Nairn).

While plaintiffs acknowledge relying on earlier opinions prepared by Dr. Nairn, *see* Pls.' Reply at 2, plaintiffs challenge the latest expert opinion prepared by Dr. Nairn and submitted in support of defendant's opposition to plaintiff's summary judgment motion, *id.* at 1. Plaintiffs allege that defendant has engaged Dr. Nairn "to develop opinions ex-

---

4. This rule closely parallels RCFC 12(b)(1). RCFC 12, Rules Committee Note.

5. Because the Corps' activities did not begin to affect the St. Joseph Harbor and shoreline until

the 1830s, *see Banks II*, 314 F.3d at 1306, the court expects that plaintiffs intended to refer to a later date, perhaps 1860.

pressly for this litigation" and "to undo his own previous reports about net littoral drift ... south of St. Joseph Harbor" that were prepared without knowledge of or reference to this litigation. *Id.* at 1–2. Plaintiffs complain that, in the opinion proffered by defendant in its opposition, Dr. Nairn relies on facts that he has obtained from defendant without verifying them. *Id.* at 10. Plaintiffs argue that, contrary to the teaching of *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 590, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), Dr. Nairn has failed to validate "by scientific method ... what he knows or believes by good grounds." Pls.' Reply at 10. Plaintiffs state that "[i]f his premises are wrong, his conclusions are not relevant or reliable." *Id.* at 11.

Further proceedings will be required to address the plaintiffs' objection to the legal sufficiency of Dr. Nairn's latest opinion. However, defendant has met its present burden in opposing the summary judgment motion by introducing a declaration and an expert opinion pointing to " 'specific facts showing that there is a genuine issue for trial.' " *Omega Eng'g,* 334 F.3d at 1320 (quoting *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548). The parties' briefing indicates that underlying factual questions have been presented by the proposed expert witness testimony of Dr. Nairn. *See Howes,* 814 F.2d at 643 (stating that an underlying factual question that arises in a case involving "complex scientific principles" or requiring expert witness testimony may preclude summary judgment). Specifically, the parties here do not agree that the shoreline erosion of plaintiffs' properties " 'was the predictable result of the government action' " in St. Joseph Harbor. *See Vaizburd,* 384 F.3d at 1282 (internal citation and quotation omitted). Because material facts are in dispute, the issue of liability cannot be decided on this summary judgment motion. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### III. Conclusion

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is DENIED. To schedule further proceedings in this case, the court shall conduct a telephonic status conference. On or before November 8, 2005, the parties shall provide chambers with three mutually agreeable dates and times for the conference to be held during the week of November 15, 2004.

IT IS SO ORDERED.